[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
This appeal is taken from a final judgment of the Ashtabula County Court of Common Pleas. Appellant, Timothy R. Fields, Sr., appeals from the trial court's order establishing child support in a divorce decree.
Appellant and appellee, Deborah Fields, were married on January 23, 1978. Three children were born as issue of the marriage: (1) Tina, born on December 28, 1978; (2) Jennifer, born on March 27, 1980; and (3) Timothy, Jr., born on December 11, 1981.
After the parties had been married for seventeen years, appellee filed a petition in the trial court on October 26, 1995 requesting an ex parte order of protection from domestic violence pursuant to R.C. 3113.31. Attached to the petition was an affidavit in which appellee averred that appellant had sexually assaulted her four days earlier. In the petition, appellee asked the trial court to order appellant from the marital residence and to designate her as the temporary residential parent and legal custodian of all three children. The trial court granted the exparte order on the same day and set the matter for a statutorily required hearing.
The hearing was held on November 6, 1995. It resulted in the trial court issuing a judgment entry on December 13, 1995 declaring that the terms of its prior ex parte order remained in full force and effect with one exception, to wit: appellant was named the residential parent of Tina upon agreement of the parties.
Just prior to this, on November 30, 1995, appellee filed a complaint for divorce on the grounds of gross neglect of duty and extreme physical and mental cruelty. In this complaint, appellee requested custody of the parties' two youngest children, Jennifer and Timothy.
Timothy moved in with his father in early May 1996 while the divorce action was still pending. On May 22, 1996, appellant filed a formal motion to be named the temporary residential parent and legal guardian of Tina and Timothy.[1] In this motion, appellant also requested child support due to the fact that he now had custody of two of the parties' three children. The trial court never ruled on this motion.
The matter was then set for a hearing on November 27, 1996, at which time appellee submitted a brief containing her proposed division of marital property. In this brief, appellee additionally requested that she be granted custody of the three children and child support. Also, the trial court received testimony from three witnesses who testified on behalf of appellee. The partial transcript filed in this appeal does not contain the testimony of these three witnesses. The case was subsequently continued until March 7, 1997.
In the interim, appellant filed another motion on January 7, 1997 requesting that the trial court officially confer temporary residential parent status on him with regard to Tina and Timothy. The trial court granted this motion eight days later.
On March 7, 1997, the divorce came on for its second hearing. Both parties filed statements in the trial court listing their monthly income and expenses. In addition, appellant submitted a brief containing his proposed division of marital property. In the brief, appellant also requested custody of the children currently in his possession (i.e., Tina and Timothy) and appropriate child support. Appellee, as the plaintiff in the divorce complaint, continued with the presentation of her case by calling appellant to testify on cross-examination. After hearing from appellant and another witness, the trial court recessed.
The final hearing on the divorce was held on June 20, 1997. At this hearing, appellant and appellee both testified on direct and cross-examination. In addition, appellant presented the testimony of three other witnesses, including Tina and Timothy. However, the transcript submitted from this proceeding only contains the testimony of appellant and appellee. The trial court then took the matter under advisement.
On September 2, 1997, the trial court issued a judgment entry of divorce. In the decree, the trial court found that appellant had engaged in acts of physical violence toward appellee. Consequently, the trial court granted appellee a divorce on the ground of extreme cruelty.
The divorce decree went on to address the issues of custody, child support, spousal support, and division of marital property. The pertinent rulings made by the trial court were as follows: (1) appellee was named the residential parent and legal custodian of Jennifer, while appellant received the same designation with regard to Tina and Timothy;[2] (2) appellant was found to be voluntarily underemployed for purposes of paying child support; (3) appellant was ordered to pay $105.97 per week in child support via wage assignment enforced by the Ashtabula County Child Support Enforcement Agency;[3] (4) appellee was awarded her 401K savings plan valued at approximately $10,000; (5) appellant was awarded his 401K savings plan valued at approximately $3,000; and (6) appellant was ordered to assume all marital debts in lieu of paying future periodic spousal support to appellee.
Following the entry of the divorce decree, appellant filed a timely motion for a new trial pursuant to Civ.R. 59(A). As grounds for a new trial, appellant put forth abuse of discretion under (A)(1), judgment not sustained by the weight of the evidence under (A)(6), and judgment contrary to law under (A)(7). The trial court overruled this motion without comment on October 3, 1997.
From these judgments, appellant timely appealed to this court. He now asserts the following assignments of error:
 "[1.] The trial court erred to the prejudice of defendant-appellant in maiking [sic] a child support order without using or consulting the worksheet required by O.R.C. Sec. 3113.215.
 "[2.] The trial court erred to the prejudice of defendant-appellant in finding him to be `voluntarily underemployed.'
 "[3.] The trial court erred to the prejudice of defendant-appellant in over ruling [sic] without hearing his motion for a new trial."
In his first proposed error, appellant contends that the trial court erred by ordering him to pay child support to appellee without utilizing the statutorily required support worksheet as provided for by R.C. 3113.215. As stated previously, the trial court ordered appellant to pay $105.97 per week to appellant in child support. Although the judgment entry of divorce stated that child support "should be set in accordance with the statutory guidelines," the record does not contain any child support worksheet.
R.C. 3113.215(B)(1) mandates that a trial court must calculate the amount of an obligor's child support obligation in accordance with "the basic child support schedule in division (D) of this section, the applicable worksheet in division (E) or (F) of this section, and the other provisions of this section[.]" Divisions (E) and (F) each contain a model worksheet, and both direct the trial court to "use a worksheet that is identical in content and form" to the sample provided.
The Supreme Court of Ohio has interpreted the requirements of R.C. 3113.215 as being mandatory in nature:
 "[A] review of R.C. 3113.215 leads us to the conclusion that the statute mandates that a court `use' a worksheet identical in content and form to the R.C. 3113.215(E) or (F) model worksheet, and that the amount of an obligor's child support obligation must be calculated `in accordance with,' and `pursuant to,' the basic child support schedule and appropriate worksheet. In our judgment, these mandates very clearly indicate that a worksheet must actually be completed for the order or modification of support to be made. The responsibility to ensure that the calculation is made using the schedule and worksheet rests with the trial court. R.C. 3113.215(B)(1) provides that the court, in performing its duties under the statute, is not required to accept any calculations in a worksheet prepared by any party to the action or proceeding. As R.C. 3113.215 requires the applicable worksheet to be completed, there is every reason to require that the trial court include that document in the record. Only in this fashion can appellate courts be assured that the literal requirements of R.C. 3113.215 have been followed, and that an order or modification of support is subject to meaningful appellate review." Marker v. Grimm (1992), 65 Ohio St.3d 139, 142.
Pursuant to Marker, a trial court is required to use a child support worksheet when calculating the amount of an obligor's support obligation. The worksheet must be completed and made a part of the trial court's record. Id. The failure to comply literally with the mandatory requirements of R.C. 3113.215
constitutes reversible error. Id. at 143.
In the instant case, the absence of any child support worksheet precludes this court from conducting a meaningful appellate review of the support order. There is no explanation as to how the trial court arrived at the $105.97 amount of child support. Moreover, there is no indication whether the trial court excluded Tina when calculating appellant's child support obligation since Tina was emancipated by the time the divorce decree was entered. Finally, although a disparity in income or circumstances can suffice, no explanation is provided as to why support was awarded when appellant and appellee were each designated as the residential parent and legal guardian of one minor child.
Upon review of the record, we conclude that the trial court failed to comply with the statutory requirements of R.C. 3113.215. Specifically, the record before us does not contain any child support worksheet, completed or otherwise. If the applicable worksheet was completed by the trial court, it was not included in the record, thereby leaving this court to speculate as to how $105.97 came to be the appropriate child support obligation to impose on appellant. The omission of a completed worksheet from the trial court's record constitutes reversible error.[4]
Appellant's first assignment is well-taken.
Under his second proposed error, appellant suggests that the trial court erred by finding him to be voluntarily underemployed. A review of the judgment entry of divorce does indicate that the trial court found that "under the circumstances the defendant is voluntarily underemployed."
In accordance with R.C. 3113.215, a trial court must determine the annual income of both parents when computing child support. R.C. 3113.215(A)(1) provides that:
"`Income' means either of the following:
 "(a) For a parent who is employed to full capacity, the gross income of the parent;
 "(b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent, and any potential income of the parent."
In calculating and awarding child support, therefore, the trial court must consider not only gross income, but also the potential income of a parent who is determined to be voluntarily unemployed or underemployed. As for what constitutes potential income, R.C.3113.215(A)(5) reads in pertinent part:
 "`Potential income' means * * * for a parent that the court * * * determines is voluntarily unemployed or voluntarily underemployed:
 "(a) Imputed income that the court * * * determines the parent would have earned if fully employed as determined from the parent's employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides[.]"
Thus, the potential income to be imputed to a voluntarily unemployed or underemployed parent is based upon the amount the parent would have earned if he or she had been fully employed. The imputed amount of income, in turn, is determined by the parent's employment potential and probable earnings based on recent work history, qualifications, and prevailing job and salary opportunities.
A parent's subjective motivations for being voluntarily unemployed or underemployed have no effect in determining whether potential income is to be imputed to that parent for the purpose of calculating a child support obligation. Chittock v. Chittock
(Apr. 3, 1998), Ashtabula App. No. 97-A-0042, unreported, at 8, 1998 Ohio App. LEXIS 1448; Bland v. Bland (Dec. 27, 1994), Preble App. No. CA94-04-007, unreported, at 6, 1994 Ohio App. LEXIS 5808. The Supreme Court of Ohio has held in this regard:
 "The language of R.C. 3113.215(A)(5) is clear and unambiguous. Nothing in the statute requires proof that an obligor intended to evade a higher support obligation by not obtaining employment commensurate with education, qualifications and ability. The primary design and purpose of R.C. 3113.215 are to protect and ensure the best interests of children. * * * The parent's subjective motivations for being voluntarily unemployed or underemployed play no part in the determination whether potential income is to be imputed to that parent in calculating his or her support obligation." (Emphasis sic.) (Citation and footnote omitted.) Rock v. Cabral (1993), 67 Ohio St.3d 108, 111.
The question of whether a parent is voluntarily unemployed or underemployed is a question of fact for the trial court. The trial court's decision will not be disturbed on appeal in the absence of an abuse of discretion. Id. at 112; Chittock, 1998 Ohio App. LEXIS 1448, at 9. An abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Booth v. Booth (1989), 44 Ohio St.3d 142, 144;Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Furthermore, the amount of potential income to be imputed to a child support obligor is a matter to be determined by the trial court through application of the provisions of R.C. 3113.215 to the facts and circumstances of each case. Again, the trial court's determination will not be reversed on appeal absent an abuse of discretion. Rock, 67 Ohio St.3d at 112; Chittock, 1998 Ohio App. LEXIS 1448, at 9.
In the case sub judice, appellant did not file a complete transcript of the proceedings below. In that portion of the transcript that was submitted, however, there was some evidence introduced relating to appellant's employment status. Initially, at the second hearing on March 7, 1997, appellant and appellee both filed financial statements delineating their total income and expenses. On his form, appellant indicated that he had been employed at Bailey Transportation Products ("Bailey") in Conneaut, Ohio for the previous sixteen years. He listed his gross monthly income as $1,838.68, which would amount to slightly over $22,000 per year.
By the time of the final hearing on June 20, 1997, appellant no longer worked at Bailey. Appellant testified that he had been fired unjustly from the company in late April 1997 and that he was considering contesting his termination. Appellant further testified that he had just been hired by a roofing company and had started in its employment on June 16, 1997. In terms of compensation, appellant stated that his pay would vary based upon how many square feet of roof he laid. Appellant, however, approximated that his annual earnings at the roofing company would be nearly equivalent to the $22,000 he earned at Bailey.
In the divorce decree, the trial court found as follows:
 "The defendant was previously employed at Bailey Transportation Products, averaging $22,000 per year. He recently left this employment under mysterious circumstances. He testified that he left Bailey voluntarily, then acknowledged that he was fired, but claimed that the firing was wrongful and that he was contesting his termination. He also testified that he is presently employed by Ron's Roofing and that he expected to make about the same as he did at Bailey. Even if present earnings do not equal those at Bailey, under the circumstances the defendant is voluntarily underemployed."
The only testimony of record indicated that appellant's earnings at the roofing company would be approximately the same as those he earned previously at Bailey. However, the trial court ruled that if his earnings in the future were lower, the court would consider him to be underemployed. We fail to see a legitimate basis to conclude that appellant was voluntarily underemployed at the time of the hearing and, thus, regard it as a premature ruling.
Perhaps a finding of voluntary underemployment would have been more appropriate at some point in the future after appellant had been employed at the roofing company for a longer period of time. Revisiting the issue at that time would afford the trial court a better understanding of appellant's hours worked and rate of pay. However, based on appellant's testimony as to his present earnings at the June 20, 1997 final hearing, we conclude that there was an insufficient factual basis to make a finding of voluntary underemployment at that time.
Thus, the trial court abused its discretion by finding appellant to be voluntarily underemployed at the time of the final hearing. Appellant's second assignment has merit.
In his third proposed error, appellant maintains that the trial court erred by denying his Civ.R. 59 motion for a new trial. Under this assignment, appellant essentially contends that various aspects of the trial court's judgment entry manifested either an error of law or an abuse of discretion, thereby entitling him to a new hearing.
Appellant specifically takes issue with four provisions of the divorce decree. The first two issues are those of child support and the finding of voluntary underemployment. Given our analysis of the first and second assignments of error, this court has already determined that appellant is entitled to a new hearing on these matters. Thus, we need not address them again.
The third and fourth issues raised by appellant in this assignment concern the trial court's orders relating to lump sum spousal support and the assumption of marital debts. In the judgment entry of divorce, the trial court ordered as follows:
 "The plaintiff is entitled to an additional offset in property division for the defendant's financial misconduct.
 "As a result of defendant's financial misconduct and for lump sum spousal support, the plaintiff should receive her 401K savings free of any claim of defendant.
 "In lieu of periodic or future spousal support, the defendant should assume liability for all of the marital debts."
Based on the foregoing language from the divorce decree, the trial court ostensibly awarded appellee her 401K plan as a form of "lump sum spousal support." However, the trial court also invoked the notion of financial misconduct in the same paragraph of the judgment entry. The finding of financial misconduct was predicated on the fact that appellant forged his wife's name on a check drawn on her personal checking account and then used the money to purchase a campsite trailer for his mother.
In his brief before this court, appellant claims that the Revised Code does not allow for the provision of spousal support in the form awarded by the trial court. Beyond making this bare assertion, however, appellant does not articulate precisely what was incorrect about the award.
R.C. 3105.18(B) states in part that "[a]n award of spousal support may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, from future income or otherwise, as the court considers equitable." Under the statute, therefore, a trial court can decree a lump sum amount (i.e., a sum of money payable in gross) of spousal support.
From our perspective, the relevant question is whether the trial court really awarded appellee her 401K plan as a form of lump sum spousal support. Despite the "spousal support" language excerpted above, the trial court appears to have awarded appellee this money as part of her share of the marital property pursuant to R.C. 3105.171. In the section of the divorce decree dispersing the parties' marital property, the trial court expressly ordered that appellee should be awarded her 401K plan valued at approximately $10,000, while appellant was allowed to retain his 401K plan with an approximate value of $3,000.
Moreover, the reference to appellant's "financial misconduct" also suggests a division of marital property under R.C. 3105.171, as opposed to an award of lump sum spousal support pursuant to R.C. 3105.18. The former statute contains the following language authorizing a trial court to take a spouse's financial misconduct into consideration when awarding marital property:
 "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." (Emphasis added.) R.C. 3105.171(E)(3).
Even before the paragraph that jointly referred to financial misconduct and spousal support, the trial court found that appellee was "entitled to an additional offset in property division for the defendant's financial misconduct." This, too, suggests an intent on the part of the trial court to award appellee her 401K plan as marital property due to appellant's financial misconduct. Since appellee's 401K plan had a higher value than her husband's respective plan, the trial court did succeed in compensating the offended spouse with a greater award of marital property as authorized by R.C. 3105.171(E)(3).
Upon review, therefore, we believe that the trial court's reference to lump sum spousal support in relation to appellee's 401K plan constituted careless wording, but not reversible error. The trial court was well-within its discretion to distribute this money to appellee in the division of marital property required by R.C. 3105.171.
Indeed, when the entire judgment entry is taken into account, it appears that the trial court did award the 401K plan to appellee as marital property, not lump sum spousal support. Even though appellee's 401K plan was worth approximately $7,000 more, the trial court was justified in awarding the parties' their respective plans due to appellant's financial misconduct. It should be noted that appellant does not challenge the trial court's finding of financial misconduct in the present appeal. Thus, the award of the 401K plan to appellee stands on its own as a proper division of marital property under R.C. 3105.171(E)(3).
The fourth and final issue raised by appellant is the trial court's order that "[i]n lieu of periodic or future spousal support, the defendant should assume liability for all of the marital debts." Again, appellant contends that this was error, but fails to articulate with any precision exactly what it was about this order that was contrary to law.
On its face, the order imposes liability for the marital debts on appellant in place of ordering him to pay periodic spousal support payments to appellee in the future. As such, the trial court seems to have had appellee's future support in mind when it crafted the order.
The trial court's action was in error to the extent that it was ordering appellant to assume the marital debts as a means of securing appellee's future support. The allocation of such debt would have more properly been accomplished under the auspices of the property division statute. Under the Revised Code, the division of property must be made "prior to" and "without regard to" any award of spousal support. R.C. 3105.171(C)(3). This ensures that there will be no blurring of property division and spousal support awards. The requirement is important because a trial court must apply different statutory criteria when dividing property and awarding spousal support.
Based on our reading of the divorce decree, it appears that the trial court was blurring the concept of property division and spousal support when it ordered appellant to assume liability for all marital debts "[i]n lieu of periodic or future spousal support" payments.[5] As a result, that portion of the trial court's judgment entry of divorce must be reversed and remanded for further consideration.
Appellant's third assignment is well-taken to the extent indicated. Specifically, appellant is entitled to a new hearing on the issues of whether he is voluntarily underemployed and what his child support obligation should be as calculated by using a worksheet in accordance with R.C. 3113.215.[6] In addition, the trial court must revisit and remedy the issue of how the marital debt should be allocated between the parties.
Based on the foregoing analysis, appellant's three assignments of error have merit to the extent indicated. Accordingly, the judgment of the trial court is reversed, and the cause is hereby remanded to the trial court for further proceedings in accordance with this opinion. _________________________________________ JUDGE JUDITH A. CHRISTLEY
FORD, P.J., concurs with Concurring Opinion,
MAHONEY, J., (Edward), Ret., Ninth Appellate District, sitting by assignment, concurs.
[1] Since appellant had already been designated the temporary residential parent and legal guardian of Tina by way of the trial court's December 13, 1995 judgment entry, this motion was superfluous as applied to her.
[2] By this time, Tina was emancipated because she had turned eighteen-years-old in December 1996 and had graduated from high school in early June 1997. This obviated any need for the trial court to place her in the custody of either parent.
[3] There was a suggestion at oral argument that the issue of child support was being revisited in the trial court due to the emancipation of Jennifer. However, we must proceed upon the appeal as presented from the September 2, 1997 divorce decree.
[4] At oral argument, even appellee's attorney conceded that the judgment had to be reversed for this reason.
[5] The trial court could certainly quantify these debts and assign a corresponding amount as spousal support.
[6] It may very well be that appellant should no longer have any child support obligation in light of the fact that Jennifer, the only child over whom appellee was given custody, reached the age of emancipation since the present appeal was filed.
 CONCURRING OPINION