OPINION
The Montgomery County Court of Common Pleas, Domestic Relations Division, ordered Vicki Able, n.k.a. Vicki Mowod, to pay child support to her former spouse, Thomas Able, based on an imputed amount of income, and found her in contempt of court for failure to pay child support. On appeal, Thomas challenges the amount of the income imputed to Vicki and the trial court's failure to award him reasonable attorney fees incurred in pursuing the contempt citation.
The Ables were married in December 1986 and divorced in December 1994. A magistrate designated Vicki as the residential parent of the parties' two children, Annette and Bryan Able, in February 1996. Vicki worked full time, earning $27,227 annually, until November 4, 1996, when she began working thirty hours a week. As a part-time employee, Vicki would have earned income of $20,420 per year. In December 1996, Vicki informed Thomas of her plans to remarry and to move with Annette and Bryan to Pittsburgh, Pennsylvania, where her fiancee, George Mowod, resided with his children. Thomas filed a motion for a change in residential parental rights in January 1997. Shortly after marrying Mowod on February 8, 1997, Vicki resigned from her job. In the spring of 1997, Vicki moved to Pittsburgh, where she worked six to eight hours a week at a karate studio owned by Mowod. In that position, Vicki earned approximately $200 per month.
In August 1997, Thomas was designated the residential parent of Annette and Bryan. On October 28, 1997, a magistrate conducted a hearing on the issue of child support. In its December 15, 1997 decision and permanent order, the magistrate found that Vicki was voluntarily underemployed and, based on imputed income of $20,000, he set her child support obligation at $180 per child per month retroactive to August 1997. Both of the parties filed objections to the magistrate's decision and permanent order, and on March 26, 1998, the trial court remanded the matter for a hearing on Vicki's educational background, qualifications, and work history over the past three years, her salary history over the past three years, and her efforts to find appropriate full-time employment in the Pittsburgh area. The hearing was scheduled for April 23, 1998. Also scheduled for a hearing on April 23, 1998 was Thomas's motion that Vicki be ordered to show cause why she should not be held in contempt for failure to pay child support.
On June 9, 1998, the magistrate reaffirmed its December 15, 1997 child support order and held Vicki in contempt for failure to pay child support in compliance with that order. The parties filed objections, and the trial court adopted the magistrate's December 15, 1997 decision and permanent order except that it imputed income to Vicki based on her current job and thus reduced Vicki's child support obligation to $128 per child per month. The trial court also ordered Vicki to continue "to seek employment which is appropriate to her educational and professional background, or other full-time employment which is available." Thomas appeals, raising two assignments of error.
 I. ALTHOUGH THE IMPUTATION OF INCOME TO THE APPELLEE IS WARRANTED, BASED UPON THE FACTS AND CIRCUMSTANCES, THE TRIAL COURT ABUSED ITS DISCRETION BY ADOPTING AN ARBITRARY, UNREASONABLE, AND UNCONSCIONABLE FORMULA TO IMPUTE INCOME.
Thomas contends that the trial court abused its discretion in imputing income to Vicki by failing to consider her previous work history, education, and experience, by ignoring the fact that she is currently employed at her second husband's business, and by considering the number of hours that she works rather than her potential to earn income.
At the October 28, 1997 hearing, Vicki testified that she was then employed at USA Professional Karate Studio, where she primarily picked up supplies and performed entry-level computer work. Vicki testified at the April 23, 1998 hearing that she had a two-year degree and several years of experience in civil engineering, particularly computer-aided drafting and mapping. She stated that, since February 1998, she had contacted ten "head-hunting companies" and twelve companies in the engineering field in the Pittsburgh area and that most of them had indicated in letters that they did not have job openings. She explained that her employment opportunities in the field would improve in the next few months because the demand for her specialized services was seasonal.
In the June 9, 1998 decision and permanent order, the magistrate indicated that he had not found Vicki's testimony credible "in terms of her attempts to find employment" because she had not started looking for work until February 1998 and had composed her own "rejection letters" for potential employers to sign and because he believed that Vicki wanted to stay home to care for her step-children. Based on these findings, the magistrate concluded that $20,000 was an appropriate amount of income upon which to base Vicki's child support obligation and reaffirmed the December 15, 1997 order setting her child support obligation at $180 per month per child.
In response to the parties' objections to the magistrate's decision and permanent order, the trial court found that Vicki was "voluntarily underemployed as a result of her failure to secure employment commensurate with her abilities upon her relocation." Due to the lack of sufficient evidence on whether full-time employment in Vicki's professional field was available in the Pittsburgh area, the trial court multiplied her current hourly wage of $6.60 by forty hours a week to arrive at the sum of $13,622.40 as her income for calculating her child support obligation. Thus, the trial court lowered Vicki's child support obligation to $128 per child per month. The trial court further ordered her to continue to seek employment in her professional field.
For the purpose of calculating the amount of a voluntarily underemployed parent's child support obligation, income includes the sum of the parent's gross income and any "potential income." R.C. 3113.215(A)(1)(b). The potential income of a voluntarily underemployed parent includes:
 Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the parent's employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides.
R.C. 3113.215(A)(5)(a). Whether a parent is voluntarily underemployed within the meaning of R.C. 3113.215(A)(5) and the amount of "potential income" to be imputed to a child support obligor are matters for the trial court's determination based on the facts and circumstances of each case. Rock v. Cabral (1993),67 Ohio St.3d 108, 112. Such determinations will not be disturbed on appeal absent an abuse of the trial court's discretion. Id. at 112.
In our judgment, the trial court did not abuse its discretion in modifying the amount of Vicki's child support obligation as set by the magistrate. The trial court reasonably found that the magistrate should not have imputed income to Vicki based solely on her work experience in Dayton. The trial court chose to believe Vicki's testimony that she had attempted unsuccessfully to find employment commensurate with her qualifications and work history and pointed out that the parties had presented insufficient evidence upon which to conclude that such employment was available in the Pittsburgh area. Contrary to Thomas's assertion, the trial court appears to have considered Vicki's recent work and salary history and her qualifications in calculating her child support obligation. Although Thomas questions the diligence of Vicki's search for employment in her professional field, in the absence of record evidence contradicting Vicki's testimony on the job opportunities in her professional field in the Pittsburgh area, we are not in the position to disturb the trial court's finding that she had attempted to find appropriate employment. Thus, the trial court acted reasonably in imputing income to Vicki based on her current hourly wage level at full-time employment and in ordering her to continue to seek work in her field.
The first assignment of error is overruled.
 II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND APPELLEE TO BE IN CONTEMPT FOR A FAILURE TO PAY CHILD SUPPORT BUT FAILED TO AWARD APPELLANT ATTORNEY FEES.
Thomas argues that the trial court should have ordered Vicki to pay his attorney fees for matters related to the contempt citation.
In his March 2, 1998 motion for contempt, Thomas asserted that, because Vicki was "approximately six months in arrears of child support," she should be ordered to "show cause why she should not be held in contempt of the previous order of the Court for failure to pay." Thomas requested "court costs, attorney fees and other such relief in accordance with law."
In the June 9, 1998 decision and permanent order, the magistrate pointed out Vicki's acknowledgments that, despite having received an order to pay child support in January 1997, she had not sent any child support payments until March, that she had not initiated contact with the SEA following the January 1997 order, and that the SEA had returned one month's child support payment to her because payments could not be made by personal check. The magistrate found Vicki in contempt for failure to pay child support and imposed a three-day jail sentence, which would be suspended on the condition that she pay all future child support. The magistrate ordered Vicki to "pay the court cost for this order" without indicating the amount that was due or discussing Thomas's request for attorney fees. Thomas objected to the magistrate's failure to award him attorney fees, and Vicki responded that she should not be obligated to pay Thomas's attorney fees because the April 23, 1998 hearing was not limited to the issue of contempt, but also involved the trial court's remand order for additional testimony on the amount of her child support obligation.
R.C. 3109.05(C) provides that, if a child support obligor is found in contempt of court for failure to comply with an order to pay child support, the court making the finding, in addition to imposing any other penalty or remedy, "shall assess all court costs arising out of the contempt proceeding against the person and require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt."
In this case, although the trial court adopted the magistrate's decision finding Vicki in contempt for failing to pay child support, it neglected to address Thomas's objection to the magistrate's failure to award reasonable attorney fees. The trial court thus erred in failing to comply with the mandatory language of R.C. 3109.05(C) that the person cited for contempt be ordered to pay any adverse party's reasonable attorney fees arising in relation to the act of contempt. Because the April 23, 1998 hearing was not restricted to the matter of contempt, but also involved Vicki's potential to earn income, the trial court should have ordered Vicki to pay Thomas's reasonable attorney fees attributable to the contempt portion of the hearing.
The second assignment of error is sustained.
The judgment of the trial court will be affirmed in part, reversed in part, and remanded for a determination of the reasonable attorney fees incurred by Thomas attributable to the contempt proceedings against Vicki.
BROGAN, J. and KERNS, J., concur.
(Hon. Joseph D. Kerns sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to: Vicki L. Mowod, James R. Kirkland, Hon. V. Michael Brigner