DECISION AND JUDGMENT ENTRY
This case is on appeal from the November 9, 1999 judgment of the Ottawa County Court of Common Pleas, which declared appellee, Joseph A., to be the natural father of Makenzie A. and ordered him to pay child support based upon a yearly income of $12,000. On appeal, appellants, Rebecca A., her daughter, Makenzie A. (born October 11, 1998), and the Ottawa County Department of Human Services assert the following assignments of error:
 "ASSIGNMENT OF ERROR NO. I THE TRIAL COURT ERRED IN FAILING TO MAKE THE CHILD SUPPORT ORDER RETROACTIVE TO [SIC] BIRTH OF THE CHILD AND ABUSED ITS DISCRETION IN MAKING SAID ORDER EFFECTIVE OVER EIGHT MONTHS AFTER THE PATERNITY ACTION WAS FILED.
 "ASSIGNMENT OF ERROR NO. II THE TRIAL COURT'S DECISION IS IN ERROR AS THE PURPORTED FINDINGS OF THE COURT ARE NOT CONSISTENT WITH ITS RESULTING ORDER FOR SUPPORT AND CHILD SUPPORT GUIDELINES AND NO EXPLANATION OR DEVIATION FACTORS ARE SET FORTH BY THE COURT TO ACCOUNT FOR SAME.
 "ASSIGNMENT OF ERROR NO. III THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO FIND DEFENDANT-APPELLEE TO BE VOLUNTARILY UNDEREMPLOYED AND IMPUTING PROPER INCOME IN ACCORDANCE WITH FACTORS SET FORTH IN R.C. 3113.21.5.
 "ASSIGNMENT OF ERROR IV THE TRIAL COURT BELOW ERRED IN EXCLUDING EVIDENCE OF DEFENDANT-APPELLEE'S FORMER CHILD SUPPORT OBLIGATION FOR ANOTHER CHILD AS SAID EVIDENCE WAS RELEVANT TO THE ISSUE OF APPELLEE'S INCOME IF THE FORMER GUIDELINES WAS COMPUTED IN ACCORDANCE WITH APPLICABLE GUIDELINES.
 "ASSIGNMENT OF ERROR V THE TRIAL COURT ERRED IN FAILING TO COMPLETE A CHILD SUPPORT WORKSHEET AND MAKE SAME PART OF THE RECORD IN ACCORDANCE WITH REVISED CODE SECTION 3113.21.5.
 "ASSIGNMENT OF ERROR VI THE DECISION OF THE LOWER COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Appellants initiated this action against appellee in March 1999 to establish a parent-child relationship. An administrative action to determine parentage was initiated in October 1998 and had been dismissed because appellee was uncooperative.
Pending a determination of parentage, the court held a hearing to determine the amount of temporary child support to be paid based upon the testimonies of the parties. At that hearing on May 18, 1999, Rebecca A. testified that she earned $27,040 a year and appellee testified that he earned $12,500 in 1998 and was earning about $1,200 per month at the time of the hearing.
On May 21, 1999, the court ordered that appellee pay child support based on his yearly income of $12,000 and Rebecca A.'s yearly income of $27,000. Appellee was ordered to pay $131.89 per month in child support.
After a second genetic test indicating that appellee was the father of the child, the court found, in a July 15, 1999 order, that appellee was the natural father of the child.
A second hearing was held July 27, 1999 to address the issue of child support and medical insurance coverage. Appellee failed to appear, but the court conducted the hearing because appellee had been properly served. At the hearing, Rebecca A. testified that she first met appellee on January 31, 1998, and the two lived together for the next two and one-half months. Once the couple knew that they were expecting a child, they planned to marry. However, after appellee was incarcerated twice in a ten-day period, Rebecca A. terminated the relationship. She further testified that after their relationship terminated, appellee offered to pay for an abortion to avoid supporting the child.
At the time Rebecca A. was living with appellee, he was a self-employed plumber. Rebecca A. testified that she paid for her car loan and insurance and appellee paid the remainder of the bills. She knew that he sometimes worked on the weekend for cash and did not report that income. She further testified that he had started his own business in 1998; however, appellee had begun working in his father's plumbing business when he was about twenty years old and had also worked for another company.
Vonnie Hedges, a specialist for the Ottawa County Department of Human Services, was not permitted to testify, on hearsay grounds, regarding average plumbing wages for this area because her opinions were based upon reports from the Ohio Bureau of Employment Services. However, since Hedges' testimony was excluded, the court continued the hearing so that appellants could present evidence of appellee's income.
At a subsequent hearing on August 31, 1999, Donald Wonnell, a labor market analyst, for the Ohio Bureau of Employment Services, testified. He stated that, based upon department records, the average hourly wage for a plumber, pipe fitter, or steam fitter in the Toledo Metropolitan area would be $18.67, with a range between $14 and $23. Pipe fitters and steam fitters would draw the higher wages in the range.
Peter Cantu, director of the Fremont One Stop Employment Training Center for Ottawa and Sandusky counties, testified regarding job openings in the area. Current job openings in Northwest Ohio, outside Lucas County, pay between $9 and $20 per hour, with an average salary of $18.67 per hour for a plumber, pipe fitter, or steam fitter. However, all but one of the positions required specialized training or state certification. The only general plumbing job opening was in Lima, Ohio, paying $7 to $15 per hour. He also testified that wages in the Toledo Metropolitan area would be higher.
Following this hearing, the court determined that appellee's monthly income was $1,200 because his testimony remained uncontradicted. The court also found that appellee's "over $1,100.00 per month expenses on a claimed income of $1,200.00 per month does not include obvious everyday expenses of his business or personal everyday expenses; ***." The court then ordered appellee to pay $131.89 per month in child support.In their first assignment of error, appellants contend that the trial court erred by failing to award child support retroactively to the birth of the child since the complaint for support was filed only five months after the birth of the child. The court did not indicate when the child support order was to be effective, therefore, the obligation begins as of the date of the order.
The determination of whether to award child support prior to the commencement of an action for child support is a discretionary matter for the trial court. Tod W. v. Erika P.
(Sept. 17, 1999), Wood App. No. WD-99-013, unreported. Therefore, the trial court's determination will not be overturned unless it is shown that the trial court abused its discretion. _Id. To establish an abuse of discretion, appellants must demonstrate that the trial court's actions were arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
In this case, the trial court did not indicate when its child support order was to be effective even though the order was issued eight months after the action was commenced. Furthermore, the court did not even address the issue of awarding child support for the five-month period from the birth of the child until the commencement of the action. Appellants specifically included a prayer for such an award in their complaint. Because the court did not expressly address these issues, we find that the trial court abused its discretion. Appellants' first assignment of error is well-taken.
In their second assignment of error, appellants argue that the trial court erred in calculating appellee's child support obligation based on its findings of fact. In their fifth assignment of error, appellants argue that the trial court erred by failing to complete and include in the record a child support computation worksheet.
We agree with both arguments. First, we find that the trial court erred by failing to include in the record a copy of the child support computation worksheet utilized to calculate appellee's child support obligation. Marker v. Grimm (1992),65 Ohio St.3d 139, paragraph one of the syllabus. Second, we agree that the calculation of child support was clearly erroneous. In its temporary support order, the court found that appellee's yearly income was $12,000 (despite his testimony that he earned about $1,200 per month) and computed his support obligation as $131.89 per month. In the final support order, the court concluded that appellee's monthly income was $1,200, but also calculated his support obligation as $131.89 per month. Thus, it appears that the trial court made a mathematical error when it converted appellee's monthly income into a yearly income. However, without a child support worksheet to review, we cannot determine how it was calculated. Appellants' second and fifth assignments of error are well-taken.
In their third assignment of error, appellants argue that the trial erred by failing to find that appellee was voluntarily underemployed. In their sixth assignment of error, appellants argue that the trial court's decision was contrary to the manifest weight of the evidence.
Whether a party is voluntarily unemployed/underemployed and the amount of potential income to be attributable to the party are discretionary determinations for the trial court based upon the facts and circumstances of each case. Rock v. Cabral (1993),67 Ohio St.3d 108, at the syllabus. Therefore, the decision will not be overturned on appeal unless a party demonstrates that the court abused its discretion. Id.
In this case, the court made a specific finding that appellant's expenses nearly matched his income without even taking into consideration some ordinary living and business expenses. Nonetheless, the court found that appellant's monthly income was $1,200 because there was no contradictory evidence. The court found that Wonnell could not testify to a plumber's hourly wage; he only testified that pipe fitters, steam fitters, and plumbers make an average of $18.67 per hour. The court also found that Cantu testified that wages for "plumbers within a large geographical area range from $7.00 per hour to $20.11 per hour depending upon certification and experience." Therefore, the court concluded that there was no evidence that an ordinary plumber with appellee's experience would make more than $6.92 an hour.
We agree with the trial court that there was no evidence of the wages of ordinary plumbers in the Toledo area. Therefore, the court did not abuse its discretion by relying on appellee's testimony and finding that appellee's monthly income was $1,200.
R.C. 3113.21.5(B)(5)(a) provides that when every party in a child support case has the duty to verify their current income and past income. The issue raised by this case is whether the trial court abuses it discretion by determining a child support obligation when a party failed to comply with R.C. 3113.21.5(B)(5)(a). This issue is even more significant in this type of case where the party's testimony regarding his income is suspect.
The purpose of R.C. 3113.21.5 is to promote the best interests of the children to be supported. Id. at 110 andMarker v. Grimm, supra at 141-142. Furthermore, "[t]he terms of R.C. 3113.21.5 are mandatory in nature and must be followed literally and technically in all material respects." Id. at paragraph one of the syllabus.
Some courts have reasoned that the duty to enforce the statutory obligation falls on the opposing party. Therefore, if a parent fails to supply the court with the required financial information, the opposing party must seek to compel disclosure.In re Dissolution of Marriage of Al-Faour (1990), 68 Ohio App.3d 279,285. If the parent does not comply, then the court has subpoena power to obtain the information. Accord, In re: Harris
(May 12, 1994), Cuyahoga App. No. 65913, unreported. Cf. Neff v.Neff (July 30, 1998), Cuyahoga App. No. 73094, unreported (the trial court's decision is arbitrary when the defendant did not supply financial information verifying his income).
We agree that the duty to enforce R.C. 3113.21.5(B) (5)(a) falls on the opposing party. As with all other statutes, procedural rules, and rules of court, the opposing party must compel compliance. We see no reason to treat child support statutes in a different manner.
Appellants' third and sixth assignments of error are not well-taken.
In their fourth assignment of error, appellants argue that the trial court erred by excluding evidence of appellee's former child support obligation for another child at the May 18, 1999 hearing. Appellants contend that this obligation would indicate that appellee had a higher income.
Evid.R. 402 provides that irrelevant evidence is inadmissible evidence. Evid.R. 401 defines relevant evidence as: "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
The determination of whether evidence is relevant, is a matter left to the discretion of the trial court. State v. Wiles (1991),59 Ohio St.3d 71, 80, certiorari denied (1992), 506 U.S. 832, andColumbus v. Taylor (1988), 39 Ohio St.3d 162, 164-165. Discretionary determinations are not overturned on appeal unless a party demonstrates that the trial court abused its discretion.Id.
The court concluded in this case that any prior support order would not prove appellee's current income level. We agree. Appellants' fourth assignment of error is not well-taken.
Having found that the trial court committed error prejudicial to appellants, the judgment of the Ottawa County Court of Common Pleas is reversed in part and affirmed in part. The decision is reversed only insofar as the court failed to address the issue of back support, the calculation of appellee's support obligation is erroneous, and the court failed to include a child support obligation worksheet in the record. In all other respects, the judgment is affirmed. This case is remanded to the trial court for recalculation of appellee's child support obligation and a determination of whether appellants are entitled to a lump sum judgment for back support. Pursuant to App.R. 24, the appellate court costs are to be equally split between the parties.
Richard W. Knepper, P.J., Mark L. Pietrykowski, J. JUDGES CONCUR.