This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant-Appellant Paul K. Ford has appealed from a divorce decree granted by the Medina County Court of Common Pleas, Domestic Relations Division. This Court affirms in part, reverses in part and remands the cause for proceedings consistent with this opinion.
 I
On December 16, 1989, Paul K. Ford ("Husband") and Annalee Ford ("Wife") were married to each other for the third time.[1] On September 1, 1999, Wife filed for divorce.
On June 7, 2001, the trial court approved and adopted the magistrate's decision of November 8, 2000 and granted Wife a divorce. As part of that decision, the trial court found Husband "voluntarily unemployed," instead of "voluntarily underemployed" as found by the magistrate and stated in the trial court's Findings and Order of May 9, 2001. Since it is undisputed that Husband is employed, that the trial court had discussed his voluntary underemployment, and that the child support assessment method is the same for each category, this Court considers the use of the term "unemployed" instead of "underemployed" a clerical mistake and will review the issue of Husband's "voluntary underemployment." The trial court's grant of divorce also calculated the amount of marital credit card debt and real estate taxes each party must pay and the amount of credit to be given for previous payments. Husband has appealed those portions of the trial court's decision, asserting three assignments of error.
 II Assignment of Error Number One
"THE TRIAL COURT ERRED IN IMPUTING INCOME TO [HUSBAND] AS THERE WAS NO EVIDENCE CONCERNING PREVAILING JOB OPPORTUNITIES AND SALARIES IN THE COMMUNITY."
In his first assignment of error, Husband has asserted that, in assessing child support payments, the trial court incorrectly imputed income to him as a voluntarily underemployed parent. Specifically, he has argued that the trial court lacked the proper evidence to find him voluntarily underemployed and that the only evidence presented was actually in his favor because it showed the limited employment opportunities in his profession and that developing a client base takes time.
At the time of the magistrate's decision, R.C. 3113.215 governed the procedures a trial court must follow in calculating and awarding child support.[2] In calculating the amount of child support to be provided to each party, the trial court must consider the gross income of each of the parties. "Gross income" includes all earned and unearned income from the parties. R.C. 3113.215(A)(2). If a trial court determines that a parent is voluntarily unemployed or voluntarily underemployed, it may impute to that parent the potential income which it determines the parent would have earned if fully employed. R.C. 3113.215(A)(5); See Barnick v.Barnick, 9th Dist. No. 20666, 2002-Ohio-1104, at ¶ 8. Therefore, a trial court must first determine if a parent is voluntarily unemployed or voluntarily underemployed and if it so finds, it must then calculate the potential income to be imputed. Under R.C. 3113.215(A)(5)(a), the trial court was required to determine Husband's imputed potential income from the following factors:
 "[his] employment potential and probable earnings based on [his] recent work history, [his] occupational qualifications, and the prevailing job opportunities and salary levels in the community in which [he] resides[.]"
 "[T]he question whether a parent is voluntarily (i.e., intentionally) unemployed or voluntarily underemployed is a question of fact for the trial court. Absent an abuse of discretion, that factual determination will not be disturbed on appeal." Rock v. Cabral (1993), 67 Ohio St.3d 108, 112. An abuse of discretion connotes more than an error of law or judgment, but implies that the judgment can be characterized as unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
During the trial, Husband, who has a degree in Business Administration from the University of Akron, testified that he is currently self-employed as an independent contractor for the Akron Beacon Journal and Seville Insurance Agency. He testified that he works about 30 hours per week delivering the morning newspaper for the Beacon Journal. He stated that his income from delivering newspapers varies depending on how many papers he delivers, but it is usually between $800-$1,200 per month. Husband testified that his salary at Seville Insurance Agency is commission based and that he normally spends 35 hours a week, sometimes at night or on the weekends, soliciting new clients and working on policies. After some confusion over his year-to-date income from Seville, Husband clarified that he has earned around $3,000 selling insurance for Seville.
When asked about his previous employment, Husband testified that he had worked for the insurance industry since college. He stated that he had worked at numerous companies, including Beacon Insurance, Liberty Mutual, and Cincinnati Insurance, normally as an underwriter or manager. Husband testified that he last worked at Seckinger Insurance Agency, earning $30,000 a year, but at no fault of his own, he was fired.
Husband testified that he took the job delivering papers to earn a living and that he has been looking for a better paying insurance job through employment advertisements, networking, and direct contact with insurance companies. He testified that he has contacted between twenty-five to thirty-five companies and agencies and had interviews with ten companies, but he has received no offers. Husband testified that he expects to earn $30,000 at Seville, but that generating that much business will probably take two-three years.
Ed Hantzsche, the owner of Seville Insurance Agency, confirmed that Husband is an independent contractor for his company. Hantzsche testified that based on Husband's limited schedule and his job at the Beacon Journal, his sales record is acceptable and he is doing as well as he can. When asked about Husband's work schedule, Hantzsche answered that Husband's hours are sporadic and that he does not work every day in the office. Hantzsche also explained that Husband does not report to him and that agents do not always work in the office.
Hantzsche testified that the insurance market is currently very competitive and tight because insurance companies are merging and downsizing, which results in less job opportunities for someone with Husband's experience. Hantzsche stated that out of three companies he represents, none have openings. He also testified that a new agent has to build his own business and that it normally takes a full time agent four-five years to make $40,000-$50,000 per year. He then explained that with Husband's work schedule, it would probably take him ten-twelve years to make $45,000-$50,000 per year.
After reciting trial testimony concerning Husband's current jobs, the magistrate's decision as adopted by the trial court provided, in part:
 "The Magistrate finds for purposes of the child support calculation that [Husband] is voluntarily underemployed. Except for the current sales position and some sales responsibility at Seckinger where he was salaried at $30,000.00 instead of commission-paid, in all of his other insurance positions he was in managerial or oversight capacity, including marketing. His decision to enter the new field of insurance sales without exploring other fields of employment outside of insurance where his skills may be applied is a voluntary choice that he made to the detriment of his possible earning capacity. The Magistrate finds that in addition to his gross earnings of $14,400.00 per year at the Beacon Journal, for purposes of child support calculation he should be imputed an additional $15,600.00 for total earnings of $30,000.00 per year."
This Court finds that the trial court abused its discretion by determining that Husband was voluntarily underemployed. Specifically, the trial court's "[f]ailure to consider the factors enumerated in R.C.3113.215(A)(5)(a) constitute[d] an abuse of discretion." Doepker v.Thrush (Oct. 27, 1999), 9th Dist. No. 19309, at 9. The trial court's decision was unreasonable and arbitrary because it ignores the testimony at trial concerning Husband's current employment and the prevailing employment opportunities and salaries in Husband's community. The record shows that Husband works two jobs, at an average of sixty-five hours per week, seven days per week. Uncontroverted testimony established that Husband attempted to obtain a better paying insurance position, but the only position he could secure was the commission based job at Seville. The record also shows that Husband is attempting to increase his commission at Seville. Hantzsche confirmed Husband's account of the job market by explaining that the insurance industry is very competitive and tight, which results in a lack of employment opportunities for Husband. Further, Husband and Hantzsche testified that making $30,000 per year takes at least two to three years.
The trial court's statement that Husband should seek employment in another field is unsupported by the record. The transcript is void of any testimony discussing Husband's employment potential, probable earnings, or occupational qualifications in another field. Moreover, the record contains no evidence of prevailing job opportunities and salary levels in other fields. This Court finds that the trial court's determination that Husband is voluntarily underemployed contradicts the trial testimony. Under the facts and circumstances of this case, the trial court abused its discretion. Accordingly, Husband's first assignment of error is sustained.
 Assignment of Error Number Two
"THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT FAILED TO GIVE [HUSBAND] CREDIT FOR PAYMENTS HE MADE ON MARITAL DEBTS."
 Assignment of Error Number Three
"THE TRIAL COURT ERRED IN FAILING TO GIVE [HUSBAND] ENOUGH CREDIT FOR REAL ESTATE TAXES NOT PAID BY [WIFE]."
In his second assignment of error, Husband has asserted that the trial court abused its discretion by failing to award him credit for payments he made to the credit card marital debt. In his third assignment of error, Husband has argued that the trial court committed calculation mistakes in determining the amount of credit that he was entitled to for his payment of real estate taxes.
An appellant bears the burden of affirmatively demonstrating error on appeal. Ivery v. Ivery (Jan. 12, 2000), 9th Dist. No. 19410, at 2. Pursuant to App.R. 12(A)(2), this Court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based. The brief of the appellant must contain argument and law, with citations to the authorities, statutes, and parts of the record on which the appellant relies. App.R. 16(A)(7). Moreover, it is not the duty of this Court to search the record for evidence to support an appellant's argument of an alleged error. See State v. Watson (1998), 126 Ohio App.3d 316, 321.
This Court finds that Husband's second and third assignments of error fail to affirmatively demonstrate an error on appeal. See Angle v. W.Res. Mut. Ins. Co. (Sep. 16, 1998), 9th Dist. No. 2729-M, at 2. Husband's arguments in support of the alleged error are merely broad, conclusory statements. In his second assignment of error, Husband has failed to provide any citation to the record in support of his assignment of error as required by App.R. 16(A)(7) and Loc.R. 7(A)(6). Husband bore the burden of showing, based on the record, how much credit he was due and why; his claim that the errors are "obvious" does not establish a miscalculation in credit for his credit card or tax payments. Based on the foregoing, Husband's allegations are not sufficient to establish that the trial court abused its discretion. Accordingly, Husband's second and third assignments of error are overruled.
 III
Husband's first assignment of error is sustained, and his second and third assignments of error are overruled. The judgment of the trial court is affirmed in part, reversed in part, and the cause remanded for proceedings consistent with this opinion.
BAIRD, P.J., BATCHELDER, J. CONCUR
[1] Two children were born of the marriages: Nathan, born on November 12, 1983, and Zachary, born on August 20, 1991.
[2] R.C. 3113.215 was repealed and replaced by R.C. 3119.01, et seq., effective March 22, 2001. The trial court approved and adopted the magistrate's use of R.C. 3113.215, but recognized that R.C. 3119.01
currently applies to calculating child support payments. This Court will review Husband's assignments of error based on the use of R.C. 3113.215, which was the statute in effect at the time of the magistrate's decision that was later adopted by the trial court.