OPINION
{¶ 1} Defendant-appellant, Gary Lee McKee, appeals from a Mahoning County Common Pleas Court, Domestic Relations Division decision granting a divorce to appellant and plaintiff-appellee, Monica Louise McKee, and dividing their marital property.
 {¶ 2} The parties were married on November 12, 1977. Appellee filed a complaint for divorce on January 7, 2002. Three children were born as issue of the marriage, but only one was a minor at the time of the divorce proceedings.
 {¶ 3} A magistrate held a divorce hearing on September 24, 2002. Appellee appeared with counsel. Appellant appeared pro se. Apparently, at the time of the hearing, appellant was incarcerated, serving a sentence for domestic violence and driving under the influence. Appellant was transported from jail to attend the hearing. Appellant claimed that he had sent a letter to the magistrate requesting a continuance until he was released from jail. He claimed that a secretary contacted him and told him the magistrate was not permitted to answer a one-sided communication from a party.
 {¶ 4} In his decision, the magistrate determined that appellee would be the child's residential parent and that appellant would have supervised, weekly visitation. The magistrate found appellant to be voluntarily unemployed and imputed an annual gross income of $33,680 to appellant. He then found appellant should pay child support of $392.99 per month, plus fees. The magistrate divided the parties' marital property and gave each party their separate property. The main item of dispute was the marital home. The magistrate found that the home had a fair market value of $90,000. The home was subject to a mortgage of $72,156, leaving equity of $17,844. Appellee had used $20,000 of her separate property to help finance an addition to the home. Thus, the magistrate found appellee was entitled to all of the equity in the home, which still left her $2,156 short, and found that she should keep the house.
 {¶ 5} Appellant filed objections to the magistrate's decision. The trial court held a hearing on the objections. The court issued its judgment on March 13, 2003, granting the parties a divorce and overruling appellant's objections.
 {¶ 6} Appellant filed a timely notice of appeal on April 14, 2003.
 {¶ 7} Appellant raises two assignments of error, the first of which states:
 {¶ 8} "APPELLANT WAS DENIED DUE PROCESS OF LAW IN THE TRIAL OF HIS LAWSUIT."
 {¶ 9} Appellant alleges he was denied due process. Appellant sets out facts which he apparently believes support his claim. Appellant claims that he objected to a continuance requested by appellee. The court granted the continuance and several others, delaying the trial for four months. Appellant states he was later incarcerated and without funds to hire an attorney. He claims he was scheduled for release from jail on September 25, 2002, the day after the trial was scheduled. He states that he wrote a letter to the magistrate requesting a continuance; however, the secretary took it upon herself to return the letter and treat it as a request to be present instead of filing the letter as a pleading. Appellant claims that the secretary must have informed the magistrate or judge because somehow he was permitted to attend the trial.
 {¶ 10} When reviewing a trial court's decision in a domestic relations case, an appellate court applies an abuse of discretion standard. Booth v. Booth (1989), 44 Ohio St.3d 142, 144. Abuse of discretion connotes more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 11} The trial court found that appellant did send a personal letter to the magistrate allegedly asking for a continuance. It noted that pursuant to Cannon 3(B)(7) of the Code of Judicial Conduct, a judge is not permitted to consider communications made outside the presence of the parties or their representatives concerning a pending case. Thus, the court concluded that the magistrate was precluded from reading appellant's letter and the secretary properly informed appellant of such. The court stated that it was only permitted to consider matters properly brought before it. Accordingly, unless appellant filed a motion for a continuance with the clerk of courts and opposing counsel, the court could not consider it. The court went on to note that pro se litigants are bound by the same rules and procedures as litigants who retain counsel. Finally, the court noted that appellant was served with the divorce complaint on February 8, 2002, and a trial was not held until September 24, 2002. Therefore, appellant had over eight months to hire an attorney.
 {¶ 12} As to appellant's due process argument, he does not state a specific reason for this allegation nor does he state what process he was due. There is no indication on the record that he was denied any process that was due to him.
 {¶ 13} Next, appellant claims that the magistrate should not have questioned him regarding the grounds for divorce and should have instead dismissed the case because appellee did not establish grounds for divorce.
 {¶ 14} In the complaint, appellee alleged that appellant was guilty of violating R.C. 3105.01(A)-(K), including incompatibility. Since appellant did not file an answer, he admitted to the allegations in the complaint. "Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading." Civ.R. 8(D). Furthermore, appellee testified as to the grounds for divorce. She stated that appellant has a drinking problem, consuming a 12-pack of beer a day. (Sept. 24, 2002 Tr. 4-5). She also stated that she had to get a domestic violence restraining order because appellant set a fire in the garage. (Sept. 24, 2002 Tr. 5-6). Appellee testified that she and appellant had been living apart since at least February. (Sept. 24, 2002 Tr. 6). Finally, she testified that she and appellant suffered from irreconcilable differences and that she wished to have a divorce based on incompatibility. (Sept. 24, 2002 Tr. 6-7). Thus, appellee did establish the grounds for divorce.
 {¶ 15} Finally, appellant argues that the trial court should have granted him more latitude because he was a pro se litigant. He states other districts treat pro se litigants more leniently. Citing, State ex rel. Karmasu v. Tate (1992),83 Ohio App.3d 199.
 {¶ 16} Appellant had over eight months from the filing of the complaint until the trial to retain counsel. Additionally, at the hearing, the magistrate did assist appellant. After appellee's counsel finished questioning her, the magistrate explained to appellant that he had the opportunity to present evidence if he wished to do so. (Sept. 24, 2002 Tr. 55). The magistrate also explained to appellant that he had the right to ask appellee questions if he wanted to do so. (Sept. 24, 2002 Tr. 55). Appellant then briefly questioned appellee. Pro se civil litigants are presumed to have knowledge of the law and legal procedures and we are to hold them to the same standards as litigants who retain counsel. Wesbanco Bank Barnesville v.Balcar (Dec. 21, 2002), 7th Dist. No. 00-BA-36; Sabouri v. OhioDept. of Job Family Serv. (2001), 145 Ohio App.3d 651, 654.
 {¶ 17} The trial court did not act unreasonably, arbitrarily, or unconscionably in its treatment of appellant or the issuance of its decision in this case. Thus, appellant's first assignment of error is without merit.
 {¶ 18} Appellant's second assignment of error states:
 {¶ 19} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT AWARDED THE MARITAL RESIDENCE TO THE APPELLEE AND FOUND THAT THE DEFENDANT WAS VOLUNTARILY UNEMPLOYED."
 {¶ 20} This assignment of error covers two issues. First, appellant argues that the court erred in awarding the marital residence to appellee. He asserts that the house was paid off and worth $90,000 before the renovations. He claims that renovating the house was appellee's project and that she ran up the line of credit on the house so that there would be little or no equity to divide. Appellant asserts that he was entitled to at least $45,000 in equity before the renovation project, which appellee carried on with after he had moved out of the house.
 {¶ 21} As stated above, we must apply the abuse of discretion standard of review when examining a trial court's decision in a domestic relations case. Booth, 44 Ohio St.3d at 144.
 {¶ 22} The trial court found that appellee presented a real estate appraisal, without objection, valuing the house at $90,000. (Sept. 24, 2002 Tr. 40-41). It also noted that appellee testified she believed the house to be worth the same. (Sept. 24 Tr. 41). The court found that appellant offered no evidence of a greater value for the house. It stated that while appellant's written objections allege the house is worth $170,000, it was limited to considering the evidence presented at the hearing. Additionally, the court noted that the appraisal took the renovations into account. It pointed out that appellee testified the renovations began in November 2000. (Sept. 24, 2002 Tr. 56). The appraisal, it noted, was completed in 2002. Thus, the court was satisfied that the appraised value included the renovations.
 {¶ 23} Furthermore, appellee introduced bank records showing that there was a lien on the house for $72,156.46. (Sept. 24, 2002 Tr. 46). Given the appraised value and the lien, the house had only $17,843.54 in equity. Appellee also testified that she used $20,000 of her separate property money to pay for part of the down payment on the renovation. (Sept. 24, 2002 Tr. 41-42). And appellant agreed. (Sept. 24, 2002 Tr. 58-59). Additionally, appellant did not produce any evidence at trial to show what the house's value was before the renovations were made. He did not even offer his own opinion as to the house's value. Thus, the court had no other value to compare the current value to.
 {¶ 24} Given this evidence, the trial court did not act unreasonably, arbitrarily, or unconscionably in awarding the house, including the debt on the house, to appellee. Since the only evidence offered supports the trial court's decision, we cannot say that the court abused its discretion.
 {¶ 25} Second, appellant argues that the court erred in finding that he was voluntarily unemployed. Appellant contends that he was unemployed due to illness. He argues that the court ignored his testimony on this matter. Appellant testified that he quit his job locally to move to Austin, Massachusetts for a better job. (Sept. 24, 2002 Tr. 60). He also testified that he became ill and has only worked one day since then. (Sept. 24, 2002 Tr. 60). He further testified that he was hospitalized for four or five days. (Sept. 24, 2002 Tr. 60). But he had not received a diagnosis. (Sept. 24, 2002 Tr. 60).
 {¶ 26} In determining the proper amount of child support, the court shall use a worksheet as designated in the statute to compute support. R.C. 3119.022; R.C. 3119.023. On the worksheets, the parents must list their incomes. "Income," for a parent who is employed to full capacity, is the gross income of the parent. R.C. 3119.01(C)(5)(a). "Income," for a parent who is unemployed or underemployed, is the sum of the gross income of the parent and any potential income of the parent. R.C. 3119.01(C)(5)(b).
 {¶ 27} A court can impute potential income if it first determines that the obligor is voluntarily unemployed or underemployed. Beckworth v. Westendorf, 1st Dist. No. C-020804, 2003-Ohio-5955, at ¶ 11; R.C. 3119.01(C)(11). "Potential income" includes imputed income that the court determines the parent would have earned if fully employed. R.C. 3119.01(C)(11)(a). In determining the amount of imputed income the court is to consider such factors as the parent's prior employment experience, the parent's education, the prevailing wage and salary levels in the parent's geographic area, and the parent's skills and training. R.C. 3119.01(C)(11)(a)(i)-(x). A party is voluntarily unemployed if he or she is intentionally unemployed. Rock v. Cabral
(1993), 67 Ohio St.3d 108, 112. Whether to impute potential income to a party in a divorce and whether a parent is voluntarily unemployed are questions of fact for the trial court and will not be disturbed on appeal absent a showing of an abuse of discretion. Id.
 {¶ 28} In support of its decision, the trial court pointed to appellant's statement to the magistrate that he stopped working because appellee filed for divorce. Later, appellant stated that he was sick and this caused him to be unemployed. However, the court found that appellant was unable to elaborate on his illness or why it precluded him from working.
 {¶ 29} The trial court did not abuse its discretion in imputing income to appellant. Appellant testified that he was not currently employed. (Sept. 24, 2002 Tr. 59). He stated that he stopped working at his last job at Marone Mechanical on December 29, 2001. (Sept. 24, 2002 Tr. 59). Thus, at the time of the hearing, appellant had been unemployed for one year and nine months. Appellant stated that when he worked at Marone Mechanical he earned $25 an hour. (Sept. 24, 2002 Tr. 60). When the court asked him why he stopped working there appellant responded, "I found out that somebody wanted to give me a divorce after I took care of them for 31 years." (Sept. 24, 2002 Tr. 59). He further stated that he went to Austin for a better job. (Sept. 24, 2002 Tr. 60). However, he stated he only worked for one day because he got sick. (Sept. 24, 2002 Tr. 60). Appellant claimed he did not have a diagnosis but that he lost 40 to 50 pounds, had backaches, and could not sleep. (Sept. 24, 2002 Tr. 60). He also stated that he had been hospitalized for four or five days but did not stay longer because he could not afford it. (Sept. 24, 2002 Tr. 60).
 {¶ 30} Additionally, appellee introduced appellant's 2000 tax return. She testified that it showed appellant earned $33,680 in 2000, $27,680 in wages and $6,000 in unemployment. (Sept. 24, 2002 Tr. 15). She testified that appellant was a pipe fitter and that he usually took some unemployment each year. (Sept. 24, 2002 Tr. 14-15).
 {¶ 31} Based on this evidence, we cannot conclude that the trial court abused its discretion in imputing income to appellant in the amount his last tax return showed. He testified that he voluntarily quit his job at Marone Mechanical. He had been unemployed for one year and nine months. Appellant claimed he had been ill, but could not elaborate. Accordingly, appellant's second assignment of error is without merit.
 {¶ 32} For the reasons stated above, the trial court's decision is hereby affirmed.
Judgment affirmed.
Waite, P.J., and Vukovich, J., concur.