[Cite as *Pendergraft v. Watts*, 2011-Ohio-5649.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 93808**

## SANDRA L. PENDERGRAFT

PLAINTIFF

## [APPEAL BY STATE OF OHIO, CUYAHOGA SUPPORT ENFORCEMENT AGENCY]

APPELLANT

vs.

## MICHAEL WILLIAM WATTS

DEFENDANT-APPELLEE

## JUDGMENT:
## REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. D-282266

**BEFORE:** Rocco, J., S. Gallagher, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:**   November 3, 2011

**ATTORNEYS FOR APPELLANT**

William D. Mason
Cuyahoga County Prosecutor

BY:   Kestra Smith
Assistant County Prosecutor
C.S.E.A.
P.O. Box 93923
Cleveland, Ohio 44113

BY: Lawrence Rafalski
        Joseph C. Young
Assistant County Prosecutors
C.S.E.A.
P.O. Box 93894
Cleveland, Ohio 44101

BY:   Mark R. Marshall
Assistant County Prosecutor
C.S.E.A.
P.O. Box 451146
Westlake, Ohio 44145

**FOR APPELLEE**

Michael William Watts, Pro Se
643 West Hopocan Avenue
Barberton, Ohio 44203

KENNETH A. ROCCO, J.:

{¶ 1} The state of Ohio, Cuyahoga Support Enforcement Agency ("CSEA"), appeals from an order of the domestic relations division of the common pleas court ("the DR court") that partially granted CSEA's motion to show cause, and determined the arrearage due on a previous child support order. The DR court found that the obligor, defendant-appellee Michael William Watts, was in arrears in the amount of $5,060.74 and ordered him to continue to make support payments of $60 per month as well as $40 per month payments on the arrearage.

{¶ 2} In CSEA's original appeal from the foregoing order, relying on *Pula v. Pula-Branch*, Cuyahoga App. No. 93460, 2010-Ohio-912, (authored by Christine T. McMonagle, P.J.), this court held that the DR court lacks subject matter jurisdiction over a UIFSA[1] petition, and therefore vacated the DR court's order. *Pendergraft v. Watts*, Cuyahoga App. No. 93808, 2010-Ohio-3196 ("*Pendergraft I*"). CSEA appealed this court's decision in *Pendergraft I* to the Ohio Supreme Court. On the authority of its decision in *Pula v. Pula-Branch*, 129 Ohio St.3d 196, 2011-Ohio-2896, 951 N.E.2d 72, the

---

[1] Uniform Interstate Family Support Act. R.C. Chapter 3115.

supreme court reversed this court's decision in *Pendergraft I* and remanded for consideration of the merits of CSEA's appeal.

**{¶ 3}** CSEA asserts in seven assignments of error that the DR court abused its discretion when it adopted the magistrate's decision, because the magistrate acted improperly, both in failing to find Watts in contempt of court and in finding him in substantial compliance with the support order. This court agrees. Consequently, the DR court's order is reversed, and this case is remanded for further proceedings.

**{¶ 4}** The underlying facts of this case were set forth in *Pendergraft I*, at ¶2-6 as follows.

**{¶ 5}** "Sandra L. Pendergraft petitioned the domestic relations division of the common pleas court in September 2001 to register a North Carolina child support order for enforcement. The voluntary support order attached to the petition obligated Watts to pay $60 per month for the support of his child; the petition indicated that $1,142 was past due pursuant to this order. Watts did not object to the registration. On December 26, 2001, the domestic relations court registered the North Carolina order and ordered Watts to pay current support of $60 per month plus $40 per month toward the arrearage.

**{¶ 6}** "In September 2005, CSEA filed a motion to show cause why Watts should not be held in contempt for failure to comply with the support

order. Watts failed to appear for the magistrate's hearing on the motion. The magistrate concluded, based upon an affidavit of arrears submitted by North Carolina, that the arrearage due on the support order was $5,379.94 as of November 9, 2005, and found Watts in contempt for failing to pay support as ordered. No objections to the magistrate's report were filed. The domestic relations court adopted the magistrate's recommendation and sentenced Watts to 30 days in jail or, in the alternative, not less than 200 hours of community service, but gave him the opportunity to purge his contempt by paying $500 within 30 days. The court further ordered Watts to seek employment. After Watts failed to purge his contempt, the court issued a capias for his arrest. One year later, Watts had not been apprehended and the court dismissed the capias.

{¶ 7} "In March 2009, CSEA filed another motion to show cause why Watts should not be held in contempt for failing to pay support. The magistrate conducted a hearing on this motion on May 28, 2009, at which Watts again failed to appear. CSEA submitted three exhibits to the court, [viz.,] a payment receipt calculation, a payment record, and a certified statement of arrears from North Carolina; the magistrate found these exhibits to be true. The magistrate concluded that the arrearage reported by North Carolina was less than the arrearage found in the domestic relations

court's 2005 order. The magistrate construed this fact to mean that Watts had paid all current support due since the prior order. * * * [T]hese payments were not made through CSEA, they were paid through North Carolina, so the magistrate concluded that Watts was in substantial compliance with the support order. Therefore, the magistrate recommended that the domestic relations court issue an order finding Watts in arrears in the amount of $5,060.74 as of April 30, 2009, and order him to continue paying current support of $60 per month plus $40 per month toward the arrearage."

{¶ 8} The magistrate thus decided CSEA's motion to show cause was "granted in part as to the arrearage amount," but issued no contempt citation against Watts. No transcript was made of this hearing before the magistrate.

{¶ 9} CSEA filed objections to the magistrate's report. In support of the objections, Lawrence Rafalski, the assistant county prosecutor assigned to the case to represent CSEA, and who had been present at the hearing before the magistrate, submitted his affidavit.

{¶ 10} Rafalski averred that he provided to the magistrate, as the first page of his exhibits, a document entitled, "Statement of fact for show-cause [hearing] against Michael Watts, D-282266/UIFSA." Rafalski averred that the magistrate failed to attach this page to her decision, but the page had

been filed; thus, it could be found in the court's file. In pertinent part, this page noted Watts had "paid nothing through CSEA as of April 30, 2009; and, therefore, has violated  * * * the Court's last order to pay support."

{¶ 11} The DR court subsequently overruled CSEA's objections and adopted the magistrate's decision. The DR court granted CSEA's motion to show cause "in part," found Watts to be in arrears in the amount of $5,060.74 as of April 30, 2009, and ordered him to "continue" to pay current support plus $40 per month toward the arrearage, or be held in "contempt of Court, punishable by a fine and/or jail sentence."

{¶ 12} CSEA presents the following seven assignments of error for this court's review.

{¶ 13} "I.   **The trial court abused its discretion in refusing to find Obligor in contempt of court for failure to comply with its order to pay child support where the evidence shows Obligor failed to comply with the court's order for forty consecutive months, the court made a specific finding that 'the evidence shows Obligor made no payments through CSEA...', and, the Obligor did not even appear at the hearing to offer any defense to the contempt charge.**

{¶ 14} "II.   **As the finding of a 'motion to show cause' places the burden on the Obligor cited for contempt to offer a defense to the**

charge of contempt, and as the Obligor herein failed to appear for hearing on the motion, it was improper for the magistrate to have 'constructed' a defense for the benefit of the Obligor in his absence. It was an abuse of discretion for the trial court to adopt the magistrate's decision, because the actions of the magistrate in producing a defense on behalf of the Obligor may be seen as the magistrate's relinquishing of its [sic] responsibilities as a neutral jurist, to become an advocate for the interests of the Obligor.

{¶ 15} "III.  When the Obligor failed to attend a child-support contempt hearing, the trial court abused its discretion in refusing to find Obligor in contempt of court for failure to comply with the order to pay child support, where the court's order results from the registration of an out-of-state support order for enforcement purposes under Chapter 3115 of the Ohio Revised Code, and, the court specifically finds the Obligor has not obeyed the Ohio order, but, the statement of net arrears furnished by the originating jurisdiction shows a reduction in the amount of net arrears since the previous contempt finding, without disclosing the means by which the originating jurisdiction obtained the monies applied to the arrearage.

{¶ 16} "IV.   When the Obligor failed to attend a child-support contempt hearing, the trial court abused its discretion in refusing to find Obligor in contempt of court for failure to comply with its registered interstate support order, and, the court made a specific finding that the Obligor has not obeyed its order, but, that the circumstance of a reduction in the net arrears amount since the previous contempt finding by undisclosed assets attachment in the originating jurisdiction is deemed to be 'substantial compliance' with the trial court's order.

{¶ 17} "V.    Where an Obligor under a UIFSA interstate registration of a support order for enforcement purposes fails to attend his contempt hearing, and the unrefuted evidence shows that the Obligor failed to comply with the court's order to pay support for forty consecutive months since the last prior contempt finding, it is an abuse of discretion for the trial court to refuse to find Obligor in contempt, and results in a denial of CSEA's procedural due-process rights, by requiring CSEA to perform the 'vain act' of continuing to enforce the court's support order in the face of the court's refusal to find Obligor in contempt despite a clear legal basis to do so.

{¶ 18} "VI.    Where an Obligor under a UIFSA interstate registration of a support order for enforcement purposes fails to attend his contempt hearing, and the unrefuted evidence shows that the Obligor failed to comply with the court's order to pay support for forty consecutive months since the last prior contempt finding, a contempt finding is the only result consistent with such evidence; and, it is contrary to law for the trial court to consider any other events occurring outside the court's jurisdiction as consituting [sic] 'substantial compliance' with the order of the trial court to pay support.

{¶ 19} "VII.   Since the motion to show cause filed by CSEA on March 19, 2009 sought only a finding of contempt, and not a determination of arrears as its object, it was incorrect as a matter of law for the court to deem its judgment that Obligor was <u>not</u> in contempt of court to be a 'partial' grant of the motion to show cause. A motion 'to show cause' is not considered 'granted' in the absence of a resulting contempt finding, and, a 'determination of arrears,' by itself, is not to be deemed a 'partial' finding of contempt."

{¶ 20} CSEA argues that the DR court abused its discretion in adopting the magistrate's report and recommendation, because the magistrate made

several errors of law.[2] CSEA asserts that since the evidence the magistrate "found to be true" demonstrated Watts had not complied with the DR court's 2005 order, the magistrate went beyond her prerogative in finding Watts was in "substantial compliance" with that order. This court agrees.

**{¶ 21}** Civ.R. 53(D)(4)(d) provides in pertinent part that if "objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake *an independent review* as to the objected matters to ascertain that the magistrate has *properly determined the factual issues and appropriately applied the law*." (Emphasis added.)

**{¶ 22}** Contempt is defined as a disregard or disobedience of an order or command of judicial authority. *State v. Flinn* (1982), 7 Ohio App.3d 294, 455 N.E.2d 691. With respect to a trial court's decision on a motion to show cause why a party should not be held in contempt, an appellate court cannot reverse unless the trial court abused its discretion. *State ex rel. Ventrone v. Birkel* (1981), 65 Ohio St.2d 10, 417 N.E.2d 1249. An abuse of discretion consists of more than an error of judgment; it connotes an attitude on the part of the trial court that is unreasonable, unconscionable, or arbitrary. *Rock v.*

---

[2]CSEA's appellate brief complies only minimally with the requirements of App.R. 16(A)(7); therefore, pursuant to App.R. 12(A)(2), this court will consider CSEA's arguments generally.

*Cabral* (1993), 67 Ohio St.3d 108, 616 N.E.2d 218. That standard is met in this case.

**{¶ 23}** In *Strauss v. Strauss*, Cuyahoga App. No. 94129, 2010-Ohio-6166, ¶9, this court recently noted as follows:

**{¶ 24}** "A court may find the offending party in contempt for * * * indirect actions that constitute disobedience to an order. *Pirtle v. Pirtle*, 2nd Dist. No. 18613, 2001-Ohio-1539. * * * [I]ndirect contempt is 'misbehavior that occurs outside the actual or constructive presence of the court.' Id. One accused of indirect contempt is entitled to a 'hearing on the charge, at which the court *must* investigate the charge, hear any answer or testimony *that the accused makes or offers*, and then *determine* whether the accused is guilty.' Id." (Emphasis added.)

**{¶ 25}** If the moving party establishes by clear and convincing evidence that a valid court order existed, that the person had knowledge of the order, and that the person violated the order, the trial court *should* make a contempt finding so that the orderly administration of justice may proceed. *Hueber v. Hueber*, Clermont App. Nos. CA2006-01-004, CA2006-02-019, CA2006-02-020, 2007-Ohio-913. "Clear and convincing evidence is that which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." Id. at ¶16.

{¶ 26} The movant need not prove that the contemnor's violation was either purposeful, willing, or intentional. *Pugh v. Pugh* (1984), 15 Ohio St.3d 136, 472 N.E.2d 1085. Indeed, "it is irrelevant that the transgressing party does not intend to violate the court order. *If the dictates of the judicial decree are not followed, a contempt violation will result.*" Id. at 140, 472 N.E.2d 1085. (Emphasis added.) Once the movant establishes a prima facie case of contempt, the burden then shifts to the contemnor to prove his inability to comply with the court order. *Keeley v. Keeley* (July 21, 1997), Clermont App. No. CA97-02-013.

{¶ 27} "[If] contempt proceedings are invoked solely by the person aggrieved by disobedience of the court's order, a refusal to punish for contempt is largely within the discretion of the trial court[.]" *Akin v. Akin*, Summit App. Nos. 25524 and 25543, 2011-Ohio-2765, at ¶44, quoting *Thomarios v. Thomarios*, Summit App. No. 14232. Thus, if the court decides the accused is guilty, the court may or may not further decide to impose a sanction for the misbehavior. However, "punishment is inherent in contempt." *Strauss*, ¶10.

{¶ 28} In this case, CSEA's motion to show cause why Watts should not be held in contempt alleged that Watts failed to comply with the DR court's December 2005 order. The record reflects the December 2005 order required

Watts to make monthly payments, specifically stated that "[a]ll support *shall* be paid through the Ohio Support Payment Central (OCSPC)," and specifically further stated that, "*[a]ny* payments *not made* through OCSPC *shall not be* considered as payment of support." (Emphasis added.)

{¶ 29} Watts did not appear at the show cause hearing, so Watts did not present any evidence in his defense. CSEA's exhibits demonstrated Watts made no payments of the court-ordered amounts between December 1, 2005 through May 1, 2009.

{¶ 30} Nevertheless, despite the language of the December 2005 order, despite declaring that the exhibits offered by CSEA at the hearing were "found to be true," and despite Watts's failure to appear and to present any evidence on his own behalf, the magistrate determined that, since the North Carolina statement of Watts's arrears showed a $319.20 "reduction in the arrearage amount" from the prior order, this fact meant "that all current support due * * * has been paid." In the very next sentence, the magistrate stated that "[t]he evidence shows that Obligor *made no payments through* CSEA." (Emphasis added.)

{¶ 31} Lacking evidence demonstrating that Watts's arrearage reduction was made through the OCSPC, the magistrate's determination was contrary to the DR court's own previous order. The evidence demonstrated Watts

made no payments through any Ohio agency, so the magistrate's order to him to "[c]ontinue to pay" his child support made little sense. Moreover, Watts's failure even to appear at the hearing was an additional indication of the disregard he had for the court. Yet, the magistrate failed to take any of this into her consideration of CSEA's motion.

{¶ 32} The Ohio Supreme Court has defined contempt as conduct that either brings the administration of justice into disrespect, or that tends to embarrass, impede, or obstruct a court in the performance of its functions. *Windham Bank v. Tomaszczyk* (1971), 27 Ohio St.2d 55, 271 N.E.2d 815, paragraph one of the syllabus. An order making a finding of civil contempt is meant to coerce the offending party to comply with the court's orders. *Oatey v. Oatey* (Feb. 6, 1997), Cuyahoga App. No. 70630.

{¶ 33} A sanction for civil contempt allows the contemnor to purge himself of the contempt. *Tucker v. Tucker* (1983), 10 Ohio App.3d 251, 461 N.E.2d 1337. Once the contemnor complies with the court's order, the purpose of the contempt sanction has been achieved and the sanction is discontinued. *Cleveland v. Ramsey* (1988), 56 Ohio App.3d 108, 110, 564 N.E.2d 1089.

{¶ 34} Since the record of this case demonstrates Watts ignored the DR court's previous finding of contempt, disregarded its previous order to make

support payments through the Ohio agency, and made no effort to appear to explain any of his actions, the magistrate improperly determined both that he was in "substantial compliance" and that his inaction did not warrant any sanction. Under these circumstances, the DR court's adoption of the magistrate's decision constituted an abuse of discretion.

{¶ 35} CSEA's assignments of error are sustained.

{¶ 36} The DR court's order is reversed, and this case is remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

SEAN C. GALLAGHER, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR