ROCK, APPELLEE, *v.* CABRAL, F.K.A. ROCK, APPELLANT.

[Cite as *Rock v. Cabral* (1993), 67 Ohio St.3d 108.]

(No. 92–1598—Submitted April 28, 1993—Decided August 11, 1993.)

---

110

*Prudence C. Spink,* for appellee.

*Allen M. Cabral,* for appellant.

DOUGLAS, J.   R.C. 3113.215 governs the procedures a trial court must follow in calculating and awarding child support.   The calculation of support must be made in accordance with the basic child support schedule set forth in R.C. 3113.215(D), and the applicable sample or "model" worksheet in R.C. 3113.215(E) or (F).   R.C. 3113.215(B)(1).   The amount calculated through line 18 of the applicable child support computation worksheet is "rebuttably presumed" to be the correct amount of child support due.   *Id.*   Court-ordered deviations from the schedule and worksheet are not permitted absent full and strict compliance with the requirements of R.C. 3113.215(B)(1)(a) and (b).   See *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496.   The overriding concern of the legislation is to ensure the best interest of the child(ren) for whom support is being awarded.   *Id.* at 141–142, 601 N.E.2d at 498.

In computing child support in accordance with the provisions of R.C. 3113.215, a trial court must determine the annual income of each of the child's parents. R.C. 3113.215(A)(1) provides that:

" 'Income' means either of the following:

"(a) For a parent who is employed to full capacity, the gross income of the parent;

"(b) *For a parent who is unemployed or underemployed,* the sum of the gross income of the parent, and *any potential income of the parent.*" (Emphasis added.)

R.C. 3113.215(A)(5) provides in part:

" 'Potential income' means * * * for a parent that the court determines is voluntarily unemployed or voluntarily underemployed:

"(a) The income that the court determines the parent would have earned if fully employed as determined from the parent's employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides[.]"

Thus, in calculating and awarding child support, a trial court must consider the "potential income" as well as the gross income of a parent the court determines to be voluntarily unemployed or underemployed. The "potential income" to be imputed to such parent for purposes of calculating his or her support obligation is to be determined based upon the amount the parent would have earned if he or she had been "fully employed." R.C. 3113.215(A)(5)(a). That amount is to be determined by the parent's employment potential and probable earnings based on the parent's recent work history, job qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides. *Id.*

Appellant contends that the trial court erred in finding that she was "voluntarily underemployed" within the meaning of R.C. 3113.215(A). Appellant suggests that a person is voluntarily underemployed within the meaning of the statute only if he or she has purposely reduced earnings in an effort to reduce his or her child support obligation. We disagree.

The language of R.C. 3113.215(A)(5) is clear and unambiguous. Nothing in the statute requires proof that an obligor intended to evade a higher support obligation by not obtaining employment commensurate with education, qualifications and ability. The primary design and purpose of R.C. 3113.215 are to protect and ensure the best interests of children. See *Marker, supra,* 65 Ohio St.3d at 141–142, 601 N.E.2d at 498. The parent's subjective motivations for being *voluntarily* [2] unemployed or underemployed play no part in the determination whether potential income is to be imputed to that parent in calculating his or her support obligation.

---

2. Black's Law Dictionary (6 Ed.1990) 1575, defines "voluntarily" as follows: "Done by design or intention, intentional, proposed, intended, or not accidental. Intentionally and without coercion."

Further, the question whether a parent is voluntarily (*i.e.*, intentionally) unemployed or voluntarily underemployed is a question of fact for the trial court. Absent an abuse of discretion, that factual determination will not be disturbed on appeal. See, generally, *Booth v. Booth* (1989), 44 Ohio St.3d 142, 541 N.E.2d 1028 (applying abuse of discretion standard to matters involving child support). " 'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142. Here, the trial court determined that appellant has an accounting degree and the ability to earn more as an accountant than in her chosen occupation as a weaver. The trial court found that appellant obtained a degree in accounting to support herself in the accounting profession, but that her remarriage in May 1990 enabled appellant to pursue a full-time career as a weaver. Thus, the trial court found that appellant was voluntarily underemployed in her occupation as a weaver. We find no abuse of discretion on the part of the trial court in making these findings.

Appellant also argues that the trial court erred in imputing $14,000 of potential income to appellant since that amount represents nearly twice as much money as appellant has ever earned on an annual basis in any profession. However, the amount of potential income to be imputed to a child support obligor who is found to be voluntarily unemployed or voluntarily underemployed is a matter to be determined by the trial court in applying the provisions of R.C. 3113.215 and, specifically, R.C. 3113.215(A)(5). Again, absent an abuse of discretion, the trial court's determination will not be disturbed on appeal. This is so even though the evidence showed that the salary range for beginning accountants was $15,000 to $22,000 per year in the community in which appellant resides. Based upon this evidence, the trial court could have imputed an even greater amount of income to appellant than the $14,000 found by the trial court to be appropriate.

For the foregoing reasons, we hold that the question whether a parent is voluntarily underemployed within the meaning of R.C. 3113.215(A)(5), and the amount of "potential income" to be imputed to a child support obligor, are matters to be determined by the trial court based upon the facts and circumstances of each case. The determination will not be disturbed on appeal absent an abuse of discretion. We find no abuse of discretion in this case.

As a final matter, we note that the referee and the trial court, in admirable fashion, calculated appellant's support obligation using a child support computation worksheet similar to the R.C. 3113.215(E) model worksheet. The $14,000 of imputed income appears on line 1, column II of the worksheet as appellant's "[a]nnual gross income from employment." We find that where, as here, the trial court sets forth reasons in its journal entry for imputing income to a child

support obligor and specifically identifies the amount of potential income imputed, it is appropriate for the court to include potential income on line 1 of the model worksheet. In the future, a better practice for courts to follow might be to include an obligor's potential income on line 5 of the worksheet as "[o]ther annual income." In any event, whether potential income is included on line 1 or line 5 of the model worksheet, an appellate court must be able to ascertain from the trial court's journal entry the amount of potential income imputed, and the trial court's reasons for imputing income to a child support obligor. We have *no* difficulty in this case ascertaining, for purposes of appellate review, the reasons of the trial court for the action taken. The trial court's journal entry is a model of clarity.

For the reasons stated herein, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., A.W. SWEENEY, WRIGHT, F.E. SWEENEY and PFEIFER, JJ., concur.

RESNICK, J., concurs in part and dissents in part.

ALICE ROBIE RESNICK, J., concurring in part and dissenting in part.

I concur in the syllabus announced by the majority, but I dissent from the result that is reached by its application to the facts of this case. I would find that the trial court abused its discretion in determining that appellant was "voluntarily underemployed."

As stated by the majority, the question of whether a parent is voluntarily underemployed is a question of fact for the trial court and absent an abuse of the court's discretion, such factual determination will not be disturbed on appeal. It is clear to me that the facts of this case do not support a finding of voluntary underemployment.

The dates of various events in this case are extremely significant to the determination of the case. At the time the marriage was dissolved in 1989, appellant retained sole custody of the parties' two children. One year later, the younger child, Margaret, expressed a desire to live with her father. In October 1990, custody of Margaret was awarded to appellee. When appellee moved for change of custody, he sought child support payments from appellant.

Crucial to a determination of this case is the fact that appellant started her weaving business sometime prior to the change in custody. She earned approximately $7,000 in 1989 as an accounting intern and received her accounting degree in 1990. Her weaving business showed a small profit in 1989 and a loss in 1990.

Apparently the trial court completely ignored the fact that appellant started her weaving business *before* she was awarded an accounting degree and *before* Margaret's custody change. The trial court also seemed to gloss over the fact that although appellant earned money in the accounting field, it was through an

*internship* undertaken prior to graduation and was not appellant's full-time career. During much of this time she conducted the weaving business.

The majority notes that the referee found appellant's claim that she obtained an accounting degree to help her run her business lacked credibility. Such determination appears arbitrary considering the facts and circumstances of this case. Because appellant was engaged in the weaving business prior to receiving an accounting degree, I would find appellant's stated reason for obtaining an accounting degree very reasonable and completely plausible. Further, all that is relevant to this case is that appellant has a degree in accounting and was self-employed. To impute an income of $14,000 to appellant, who never earned that amount of money, is totally unreasonable.

Moreover, it should be noted that this is not a case involving a modification of child support. This is a case of change of custody with a new child support order. As she was not previously paying child support, there is no financial baseline for appellant in this case. In determining child support obligations, the court should take appellant as it found her at the time of Margaret's custody change, *i.e.*, as a self-employed artist.

I am amazed that the majority allowed the somewhat condescending attitude expressed by the trial court to pass unchallenged. In particular, the trial court found that appellant had a degree in accounting and stated: "If she chooses to indulge in a weaving business, that is her choice * * *." Chooses to "indulge"? I must ask if the trial court would have used the same tone had appellant chosen to join the Peace Corps instead of operating a weaving business. In my mind, the result reached in this case is as ludicrous as imputing the income of an orthopedic surgeon to Albert Schweitzer.

I find that the result reached in this case is an outrageous misapplication of R.C. 3113.215. Appellant has an accounting degree and has chosen to pursue a career as an artist. The finding of the trial court is both unreasonable and arbitrary and, as a result, is an abuse of discretion. This is not voluntary underemployment within the ambit of R.C. 3113.215(A)(5); therefore, I respectfully dissent.