HARDMAN, Appellant,

v.

HARDMAN, Appellee.

[Cite as *Hardman v. Hardman,* 166 Ohio App.3d 479, 2006-Ohio-1793.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2005–T–0035.

Decided April 7, 2006.

Guarnieri & Secrest, P.L.L., Anthony G. Rossi III, and Deborah L. Smith, for appellant.

John H. Large, for appellee.

DIANE V. GRENDELL, Judge.

{¶ 1} Petitioner-appellant, Kimberly K. Hardman, appeals the decision of the Trumbull County Court of Common Pleas, Domestic Relations Division, overruling her objections to the magistrate's decision modifying the amount of child support owed by petitioner-appellee, Alan Hardman. For the following reasons, we affirm the decision of the court below.

{¶ 2} Alan and Kimberly were married in July 1981 in Trumbull County, Ohio. Three children were born as issue of the marriage. On March 5, 2001, Alan and

Kimberly filed a petition for dissolution of marriage. On April 17, 2001, a decree of dissolution was entered by the domestic-relations court.

{¶ 3} Pursuant to the terms of the decree, Alan was ordered to pay Kimberly $1,215.15 a month in child support. The amount of child-support obligation was calculated based on Alan's annual salary of $62,000 with Cleveland Steel Container Corporation in Niles, Ohio.

{¶ 4} In September 2003, the Trumbull County Child Support Enforcement Agency held a hearing on Alan's request for administrative review of the child-support obligation. The agency recommended modifying the amount of support to $459 a month, effective September 1, 2003, based on Alan's current unemployment with severance benefits in the amount of $22,048 a year.

{¶ 5} On February 2, 2004, a hearing was held on the agency's recommendation before a magistrate of the domestic-relations court at which Alan was not present. The magistrate recommended maintaining Alan's support obligation at $1,215.15 a month, based on the finding that Alan "voluntarily terminated his employment." The court adopted the magistrate's decision.

{¶ 6} Alan filed a motion to vacate pursuant to Civ.R. 60(B), which the domestic-relations court granted. On September 28, 2004, Alan filed two motions to modify the child-support obligation based on "a substantial change in his income." A hearing on Alan's motions was held on January 3, 2005, before a magistrate. On January 28, 2005, the magistrate issued a decision finding that Alan "was not voluntarily terminated" and recommending that his child-support obligation be reduced to $536.48, effective September 1, 2003, based on Alan's current salary of $24,960 a year. The domestic-relations court adopted the magistrate's decision that same day.

{¶ 7} On February 10, 2005, Kimberly moved to vacate the magistrate's decision on the grounds that the evidence presented at the hearing did not support the conclusion that Alan was involuntarily terminated. The trial court construed Kimberly's motion to vacate as objections to the magistrate's decision and, on February 18, 2005, overruled the objections. From this decision, Kimberly timely appeals.

{¶ 8} Kimberly raises the following assignment of error: "The trial court abused its discretion in ordering a modification of child support."

{¶ 9} In computing the amount of child support owed pursuant to the computation worksheet in R.C. 3119.022, the trial court must determine the annual income of each of the child's parents. "For a parent who is unemployed or underemployed," income means "the sum of the gross income of the parent and any potential income of the parent." R.C. 3119.01(C)(5)(b).

■ {¶ 10} "Potential income" must be imputed to a parent whom the court "determines is voluntarily unemployed or voluntarily underemployed." R.C. 3119.01(C)(11). "Whether a parent is 'voluntarily underemployed' * * * and the amount of 'potential income' to be imputed to a child support obligor, are matters to be determined by the trial court based upon the facts and circumstances of each case. The determination will be not disturbed on appeal absent an abuse of discretion." *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 616 N.E.2d 218, at syllabus. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

■ {¶ 11} "The parent's subjective motivations for being *voluntarily* unemployed or underemployed play no part in the determination whether potential income is to be imputed to that parent in calculating his or her support obligation." (Emphasis sic.) *Rock*, 67 Ohio St.3d at 111, 616 N.E.2d 218. Therefore, a parent seeking a modification of his or her support obligation based on a reduced annual income "must be able to demonstrate an 'objectively reasonable basis' for terminating or otherwise diminishing employment." *Franks v. Franks* (June 15, 2001), 11th Dist. No. 2000–P–0015, 2001 WL 687486, citing *Koogler v. Koogler* (July 18, 1997), 2nd Dist. No. 16253, 1997 WL 435691.

■ {¶ 12} Kimberly argues that Alan's unemployment was the result of his own voluntary actions, i.e., that Alan was forced to resign his position with Cleveland Steel Container due to poor job performance.

{¶ 13} There is no transcript of the January 3, 2005 hearing on Alan's motions to modify his support obligation in the record. Instead, Kimberly has submitted an App.R. 9(C) statement of the evidence. This statement provides as follows: "Mr. Hardman testified that he was 'let go' or 'fired' from his employment at Cleveland Steel Container Corp. due to a lack of work or downsizing. He also testified that the company got rid of 2 or 3 other people in the same capacity at the same time. * * * Mr. Hardman * * * verified the effective date of his resignation, that being January 3, 2003, and that he was paid * * * severance pay for a period from January 3, 2003 through June 7, 2003. Mr. Hardman also admitted that, according to the Separation Agreement [entered into with Cleveland Steel Container], he was not 'let go' or 'fired' from this employment, but rather resigned his position. Mr. Hardman further testified that he had been demoted a year prior to his resignation from his position and further that his employer had offered him psychological counseling the year prior as well. Mr. Hardman testified that if he had not signed the Separation Agreement, he would have been fired. * * * Mr. Hardman testified that he would have been fired if

he had not signed the Separation Agreement and that he signed it to receive the severance pay."

{¶ 14} The separation agreement between Hardman and Cleveland Steel Container was also entered into evidence. Pursuant to the agreement, Cleveland Steel Container would pay Hardman his regular salary and pay 90 percent of Hardman's COBRA costs for the period from January 3, 2003, through June 7, 2003. In return, Hardman agreed to release Cleveland Steel Container "from any and all claims * * * of whatsoever kind or nature," including claims for back wages, reinstatement, claims arising out of the cessation of his employment and claims under the federal Age Discrimination Act. Pursuant to these terms, Hardman "resigned from his position effective January 3, 2003."

{¶ 15} Also entered into evidence was a letter from Dennis A. Stanowick, Director of Employee Relations at Cleveland Steel Container. This letter, dated November 19, 2003, stated as follows: "Mr. Hardman's employment was voluntarily terminated by the Company due to several issues relating to job performance. After the Company informed Mr. Hardman that he was being discharged, and in order to bring finality and closure to the employment relationship, the parties then entered into negotiations for a separation agreement. The separation agreement was structured so that Mr. Hardman could resign from his employment, and receive several other benefits, in exchange for his waiver and release of claims against the Company. Had Mr. Hardman decided not to execute the separation agreement, then his involuntary termination from the Company would have occurred."

{¶ 16} Kimberly maintains that this evidence demonstrates that Alan's termination from Cleveland Steel Container was due to poor job performance. Kimberly relies on the evidence of Stanowick's letter that Alan would have been terminated "due to several issues relating to job performance," the fact that Alan had been demoted in the previous year, and the fact that Alan had been offered psychological counseling. We disagree that this evidence is so compelling as to require a finding of voluntary termination.

{¶ 17} None of the evidence relied on by Kimberly expressly states that Alan's job performance was poor, nor does it give any indication what it was about Alan's job performance that might have required his termination. The facts that there were issues relating to job performance, that Alan had been demoted, and that Alan had been offered psychological counseling might support the conclusion that he was terminated for poor job performance; they do not mandate this conclusion. Not all performance-related issues necessarily implicate poor performance.

{¶ 18} Evidence against a conclusion that Alan was terminated for poor job performance includes Alan's testimony that his position was being eliminated due

to downsizing and that other positions were similarly eliminated and the fact that Alan's employer negotiated Alan's resignation by offering a severance package in exchange for a release of liability in connection with the resignation. Based on the evidence before this court, the trial court did not abuse its discretion by finding that Alan "was not voluntarily terminated."

{¶ 19} In *Diamond v. Diamond*, 11th Dist. No. 2002–T–0113, 2003-Ohio-3548, 2003 WL 21517985, this court upheld a determination that a parent was not voluntarily underemployed when the obligor voluntarily relinquished her nursing license in lieu of risking permanent revocation of the license and took employment earning half of what she had been earning as a nurse. Id. at ¶ 16. In a more closely analogous situation, the Ninth District Court of Appeals upheld the decision of the trial court that the parent-obligor was involuntarily terminated. In *Huff v. Huff*, 9th Dist. No. 20934, 2003-Ohio-1304, 2003 WL 1240392, the obligor's ability to work effectively at his current employment was compromised by his depression. Rather than be terminated for alleged insubordination, the obligor negotiated his resignation so as to continue to receive health benefits. Id. at ¶ 25. See, also, *Arnott v. Arnott*, 9th Dist. No. 21291, 2003-Ohio-2152, 2003 WL 1983819, at ¶ 19 (obligor held involuntarily underemployed after being terminated as a result of conviction for felonious assault where obligor was being treated for bipolar condition and made an effort to improve his income).

{¶ 20} The authority cited by Kimberly is distinguishable. Unlike the present case, the parent-obligor in *Wittbrot v. Wittbrot*, 2nd Dist. No. 2002CA19, 2002-Ohio-6075, 2002 WL 31492282, was expressly found to have been "terminated and forced to resign from [several] prior positions due to poor performance." Id. at ¶ 28.

{¶ 21} In sum, the evidence of record is adequate to support the conclusion that Alan resigned from his employment in order to avoid involuntary termination and to obtain a favorable severance package. Kimberly has failed to conclusively demonstrate that there was no "objectively reasonable basis" for Alan's resignation or that the underlying reason for Alan's resignation was poor job performance. Cf. *Kelly–Doley v. Doley* (Mar. 12, 1999), 11th Dist. No. 96–L–217, 1999 WL 262165 ("the parent who claims that his or her former spouse is underemployed or voluntarily unemployed has the burden of proof on that issue"). Kimberly's assignment of error is without merit.

{¶ 22} For the foregoing reasons, we affirm the decision of the Domestic Relations Division of the Trumbull County Court of Common Pleas modifying the amount of child support owed by Alan Hardman.

Judgment affirmed.

RICE and O'TOOLE, JJ., concur.