[Cite as *Byers v. Cartechine*, 2017-Ohio-9334.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

LAKE COUNTY, OHIO

| | | |
|---|---|---|
| DANA R. BYERS, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2017-L-043** |
| MARK CARTECHINE, | : | |
| Defendant-Appellee. | : | |

Appeal from the Lake County Court of Common Pleas, Juvenile Division, Case No. 2007 PR 01809.

Judgment:  Affirmed.

*Gary S. Okin*, Dworken & Bernstein Co., L.P.A., 60 South Park Place, Painesville, OH 44077 (For Plaintiff-Appellant).

*Sandra A. Dray*, Sandra A. Dray Co., L.P.A., 1111 Mentor Avenue, Painesville, OH 44077 (For Defendant-Appellee).


THOMAS R. WRIGHT, J.


{¶1}    Appellant, Dana R. Byers, and appellee, Mark Cartechine, never married, have one child together.  Byers appeals the trial court's decision modifying child support and designating her the obligor.  We affirm.

{¶2}    The parties' son was born September 29, 2007.  The parties have had a shared parenting plan since 2009.  At the outset, Byers was designated the residential

parent for school purposes, and Cartechine the child support obligor. Byers has another child from a separate relationship.

{¶3} In September 2013, the court adopted the parties' agreed judgment entry modifying the shared parenting plan and maintaining Byers as the residential parent for school purposes. The parties had one midweek visit with the child from 6-8 p.m. with each providing transportation for their respective visits. The September 2013 order likewise retained Cartechine's status as the child support obligor with a monthly support obligation of $687.52 when health insurance is provided. The child support worksheet attached to this 2013 agreed judgment entry identifies Byers as the residential parent and imputes her with a minimum wage annual income of $16,328. It lists $73,230.73 as Cartechine's annual income, earning 81.77 percent of the parties' income, and Byers at 18.23 percent.

{¶4} On July 30, 2014, Cartechine filed an ex parte motion for temporary custody and to suspend visitation due to Byers' inpatient treatment for alcoholism. Cartechine also moved the court to terminate the shared parenting plan, grant him custody, and modify child support. On the same date, the trial court granted Cartechine temporary legal custody of the child and ceased the collection of child support.

{¶5} Cartechine again moved the court to modify child support on January 11, 2016 and asked that Byers be designated as obligor. The parties eventually agreed to a modified shared parenting plan changing Cartechine to the residential parent for school purposes, but they disagreed about parenting schedules. Thus a trial was held in April 2016 during which Byers urged the court to permit her mid-week overnight visits during the school year. Cartechine disagreed arguing that their son would spend too

2

much time in the car. The trial court adopted Byers' recommended parenting time schedule resulting in additional transportation responsibilities for her.

{¶6} The parties also did not agree about child support. Thus, a trial was held August 18, 2016 on Cartechine's motion to modify support, which the magistrate ultimately granted. She found Byers voluntarily unemployed and imputed a minimum wage income and ordered her to pay child support to Cartechine retroactive to August 1, 2014, the date father's temporary custody of the child began.

{¶7} Byers filed objections to the decision, which were overruled. The trial court adopted the magistrate's decision designating Byers as the obligor and ordering her to pay pursuant to the statutory guidelines.

{¶8} Byers raises four assigned errors:

{¶9} "[1.] The trial court committed prejudicial error in modifying the previous child support order by designating Appellant as the child support obligor when there is a significant disparity in the incomes of Appellant and Appellee and Appellant's transportation costs have increased dramatically.

{¶10} "[2.] The trial court committed prejudicial error in concluding that Appellant was voluntarily unemployed and by ascribing potential income to Appellant where the evidence adduced at trial established that Appellant was unable to work considering her responsibilities to her child and her mother, and where no evidence was presented which would establish Appellant's potential income.

{¶11} "[3.] The trial court committed prejudicial error in refusing to deviate from the calculated child support obligation by failing to properly apply and consider the deviation factors set forth in R.C. 3119.23.

{¶12} "[4.] The trial court committed prejudicial error in refusing to deviate from the calculated child support obligation by failing to properly apply and consider the deviation factors set forth in R.C. 3119.23."

{¶13} Byers' first assigned error challenges the trial court's decision making her the obligor for child support purposes. She asserts the court misapplied the factors and that a change in obligor status was not warranted. In support, Byers claims the trial court improperly imputed $51,800 in income to her via benefits she receives from her mother based on facts not in evidence, but based instead on counsel's arguments. She also argues the court failed to consider her increased transportation costs for midweek visitation. Byers argues these factors support a decision maintaining Cartechine as the obligor.

{¶14} Absent an abuse of discretion, a trial court's determination regarding child support obligations will not be disturbed on appeal. *Pauly v. Pauly,* 80 Ohio St.3d 386, 390, 686 N.E.2d 1108 (1997).

{¶15} "[A]n abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.' *State v. Beechler,* 2d Dist. No. 09–CA–54, 2010-Ohio-1900, 2010 WL 1731784, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11. When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a

4

different result is not enough, without more, to find error.' *Id.* at ¶67." *Ivancic v. Enos*, 2012-Ohio-3639, 978 N.E.2d 927, ¶70 (11th Dist.).

{¶16} The trial court granted Cartechine's motion to modify child support after the parties agreed to continue their shared parenting plan with modifications. The trial court made Byers the obligor and ordered her to pay the amount pursuant to the child support worksheet.

{¶17} Following the trial to the magistrate and after imputing a minimum wage income to Byers, the magistrate found in part: "it is just and appropriate to designate Mother as the obligor for child support purposes." The magistrate distinguished the case relied on by Byers, i.e., *Kilgore v. Kilgore*, 11th Dist. Ashtabula Nos. 2008-A-0006 and 2008-A-0008, 2008-Ohio-5858, and found that Byers should be the obligor. The trial court agreed.

{¶18} Byers continues to argue on appeal that a close reading of *Kilgore* dictates that Cartechine should be identified as the obligor. We disagree.

{¶19} In *Kilgore,* the parties entered a shared parenting plan and the same month the plan was adopted by the court, the father moved an hour away. As a result of father's move, their parenting schedule became unworkable. Father subsequently sought sole custody of the parties' child. The trial court denied his request and maintained the shared parenting plan with modifications. The trial court likewise maintained its prior child support order based on mother's increased transportation costs resulting from father's move and based on the large disparity in the parties' incomes. *Id.* at ¶2-6. Father argued that mother should be the obligor. The court

5

disagreed, citing father's unilateral decision to relocate as causing the need to modify the parenting schedule and mother's increased transportation expenses. *Id.* at ¶12.

**{¶20}** Here, the modifications to the shared parenting plan, including the changes in the parties' parenting schedules, were precipitated by Byers. Her inpatient treatment necessitated Cartechine's ex parte motion for custody of the child. Thereafter, their shared parenting plan was changed identifying Cartechine as the residential parent for school purposes. However, the court adopted Byers' preferred parenting schedule requiring her to transport the child during the school year for midweek, overnight visits. As indicated earlier, Cartechine disagreed with this arrangement based on the distance between the parties' residences and the time their son would have to spend in the car. Unlike *Kilgore*, the changes in the residential parent status and the increased transportation costs for Byers were not caused by Cartechine.

**{¶21}** Although Cartechine continues to have a significantly higher income than Byers, this is only one of several factors a court is to consider in determining whether a deviation is appropriate. *Kilgore* at ¶25. The trial court emphasized that Byers was a college-degreed individual who had the ability to work, but simply chose not to since their child was born in 2007. Byers enjoys a comfortable lifestyle without working due to the significant generosity of her ailing mother. Thus, although there is substantial disparity in the parties' income, the trial court found this disparity was offset by the financial benefits Byers receives from her mother. This finding does not constitute an abuse of discretion.

6

**{¶22}** Contrary to Byers' argument that the trial court improperly imputed her with $51,800 in income via benefits she receives from her mother, neither the trial court nor the magistrate relies on this fact in rendering its decision naming Byers the obligor. Notwithstanding, we address this issue under Byers' third assigned error.

**{¶23}** Based on the foregoing, we disagree that *Kilgore* dictates reversal. The trial court's decision naming Byers as the obligor reflects sound and reasonable legal decision-making. Thus, her first assigned error lacks merit.

**{¶24}** Byers' second assigned error challenges the trial court's conclusion that she was voluntarily unemployed. She asserts that Mark failed to meet his burden and establish that she was *intentionally* unemployed because the evidence showed that her unemployment resulted from her duties in transporting her children and caring for her aging mother. We disagree.

**{¶25}** As stated previously, decisions regarding child support are within the trial court's discretion and will not be overturned absent an abuse of discretion. *Marek v. Marek*, 158 Ohio App.3d 750, 2004-Ohio-5556, 822 N.E.2d 410, ¶12 (9th Dist.), citing *Rock v. Cabral*, 67 Ohio St.3d 108, 616 N.E.2d 218 (1993), syllabus. An appellate court cannot substitute its decision for the trial court's judgment. *Marek*, supra.

**{¶26}** "'In determining the appropriate level of child support, a trial court must calculate the gross income of the parents. When a parent is unemployed, income includes potential income that may be imputed to the parent by the trial court.' *Bajzer v. Bajzer,* 9th Dist. Summit No. 25635, 2012-Ohio-252, ¶11, citing R.C. 3119.01(C)(5)/(11) and R.C. 3119.05. A trial court must expressly find that a parent is voluntarily underemployed or unemployed before imputing income. *Collins v. Collins,* 9th Dist.

7

Wayne No. 10CA0004, 2011-Ohio-2087, ¶36." *Brown v. Allala*, 9th Dist. Summit No. 27086, 2014-Ohio-4917, ¶22.

**{¶27}** Whether a parent is "voluntarily unemployed" and the amount of imputed income are matters to be determined by the trial court based on the facts of the case. *Rock v. Cabral,* 67 Ohio St.3d 108, 616 N.E.2d 218 (1993), syllabus.

**{¶28}** As Byers contends, voluntary in this scenario has been defined as intentional. "[T]he Ohio Supreme Court has observed that 'voluntarily' means '[d]one by design or intention, intentional, proposed, intended, or not accidental. Intentionally and without coercion.' *Id.* at 111 fn.2, quoting Black's Law Dictionary (6 Ed.1990) 1575. The burden of proving voluntary unemployment is on the parent who claims that the other is voluntarily unemployed. *Knouff v. Walsh-Stewart,* 9th Dist. Wayne No. 09CA0075, 2010-Ohio-4063, ¶27, citing *Groves v. Groves,* 12th Dist. Clermont No. CA2008-06-059, 2009-Ohio-931, ¶9." *Brown, supra,* at ¶23.

**{¶29}** Potential income under R.C. 3119.01(C)(11) is income a parent would have earned if fully employed based on the parent's prior employment experience, skills, training, and whether the parent has the ability to work. *Tener v. Tener-Tucker*, 12th Dist. Warren No. CA2004-05-061, 2005-Ohio-3892, ¶26.

**{¶30}** R.C. 3119.01(C)(11) states:

**{¶31}** "'Potential income' means both of the following for a parent who the court pursuant to a court support order, or a child support enforcement agency pursuant to an administrative child support order, determines is voluntarily unemployed or voluntarily underemployed:

8

**{¶32}** "(a) Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria:

**{¶33}** "(i) The parent's prior employment experience;

**{¶34}** "(ii) The parent's education;

**{¶35}** "(iii) The parent's physical and mental disabilities, if any;

**{¶36}** "(iv) The availability of employment in the geographic area in which the parent resides;

**{¶37}** "(v) The prevailing wage and salary levels in the geographic area in which the parent resides;

**{¶38}** "(vi) The parent's special skills and training;

**{¶39}** "(vii) Whether there is evidence that the parent has the ability to earn the imputed income;

**{¶40}** "(viii) The age and special needs of the child for whom child support is being calculated under this section;

**{¶41}** "(ix) The parent's increased earning capacity because of experience;

**{¶42}** "(x) The parent's decreased earning capacity because of a felony conviction;

**{¶43}** "(xi) Any other relevant factor."

**{¶44}** Byers alleges that *Rossi v. Rossi,* 8th Dist. Cuyahoga Nos. 100133 and 100144, 2014-Ohio-1832, supports a finding that the trial court abused its discretion here. *Rossi*, however, is distinguishable. In *Rossi*, the trial court did not find that the mother was voluntarily unemployed following the parties' divorce because she was the caregiver for the parties' four minor children; she had not worked in almost ten years;

9

she had few marketable skills, and no college education, but she had enrolled in a local community college intending to pursue a nursing degree. There was no evidence showing she was qualified for certain jobs or her potential income. *Id.* at ¶91.

**{¶45}** Unlike *Rossi*, the trial court considered Byers' employment and income history, her education, and her ability to work. It found she has a college degree, had previously earned more than minimum wage, and is able-bodied. It also emphasized that Byers stipulated in 2013 to a child support worksheet imputing her with an income of $16,328. The court also noted that Byers chose not to work since the birth of the parties' son in 2007 and that her mother pays "everything" for her, thus totally eliminating the need for Byers to work. Thus, the trial court held that she was voluntarily unemployed for child support purposes, and it imputed her with a minimum wage income of $16,536 for 2014 and $16,848 for 2015 and 2016.

**{¶46}** Further, the trial court rejected Byers' argument that she cannot work because she takes care of her ailing mother since Byers testified that her mother pays seven individuals to care for her and that she only occasionally fills in when someone calls off.

**{¶47}** And as stated previously, Byers' additional child transportation duties under the parties' most recent parenting schedule were voluntary and arose via her own advocacy.

**{¶48}** Based on the foregoing, we do not find the trial court abused its discretion in finding Byers voluntarily unemployed and imputing her with a minimum wage income. Its decision comports with reason and the evidence.

10

**{¶49}** Byers' third assigned error argues that assuming the court properly identified her as the obligor, which she disputes, it erred in not deviating downward from the calculated guideline amount. The trial court ordered Byers to pay the amount calculated in the applicable child support worksheets.

**{¶50}** R.C. 3119.22 states in part:

**{¶51}** "The court may order an amount of child support that deviates from the amount of child support that would otherwise result from the use of the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, if, after considering the factors and criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated pursuant to the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, would be unjust or inappropriate and would not be in the best interest of the child.

**{¶52}** "If it deviates, the court must enter in the journal the amount of child support calculated pursuant to the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, its determination that that amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting that determination."

**{¶53}** Upon considering whether to deviate, a trial court may consider the factors in R.C. 3119.23, which states in part:

**{¶54}** "The court may consider any of the following factors in determining whether to grant a deviation pursuant to section 3119.22 of the Revised Code:

**{¶55}** "* * *

11

{¶56} "(G) Disparity in income between parties or households;

{¶57} "(H) Benefits that either parent receives from remarriage or sharing living expenses with another person;

{¶58} "(I) The amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents;

{¶59} "(J) Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing;

{¶60} "(K) The relative financial resources, other assets and resources, and needs of each parent;

{¶61} "(L) The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married;

{¶62} "(M) The physical and emotional condition and needs of the child;

{¶63} "(N) The need and capacity of the child for an education and the educational opportunities that would have been available to the child had the circumstances requiring a court order for support not arisen;

{¶64} "(O) The responsibility of each parent for the support of others;

{¶65} "(P) Any other relevant factor.

{¶66} "* * *

{¶67} "If the court grants a deviation based on division (P) of this section, it shall specifically state in the order the facts that are the basis for the deviation."

{¶68} The trial court applied these factors and found three applicable. However, the magistrate explained that the relevant factors negated one another, and as such,

chose *not* to deviate from the child support amount as calculated pursuant to the standard worksheet. It did not conclude that the amount under the child support worksheets would be unjust or inappropriate and would not be in the best interest of the child. The trial court found the factors in subsections (G), (H), and (P) applicable, explaining:

{¶69} "The Hearing Officer has considered whether or not a deviation would be appropriate in this matter by reviewing and applying the factors contained in R.C. 3119.23. The Hearing Officer found the following factors to be pertinent and explained in part:

{¶70} "(G) Disparity in income between parties or households: At first blush, it would appear that there is a disparity in incomes between the households, however, the Hearing Officer is mindful of the fact that for the past nine years, all of Mother's living expenses have been provided by her mother. [Father's counsel] argues that the annual cost to grandmother is $51,800. Therefore, taking into account the monies given to mother with the addition of imputing minimum wage income to her, the economic status of each household is comparable.

{¶71} "(H) Benefits . . . or sharing living expenses with another person: As referenced above, Mother has no income. All of Mother's day to day needs are subsidized by her mother and have been since 2007. Mother, therefore, derives an economic benefit from her mother's generosity.

{¶72} "(P) Any other relevant factor: Mother is ordered to provide all transportation for [the child] for purposes of exercising her parenting time during the school year, which is a majority of the calendar year. Mother testified that she puts

between 1500 and 2000 miles on her car each month and that she puts gas in her car every other day at a cost of approximately $60.00 per tank or an annual cost of $10,800.

**{¶73}** "Based on the foregoing, the Magistrate has concluded that the factors justify both an upward deviation (Factor (H)) and a downward deviation (Factor (P)), as the deviations negate each other, the Magistrate cannot conclude that the child support obligation calculated pursuant to the standard worksheet is unjust, inappropriate or not in [the child's] best interests."

**{¶74}** Again, Byers argues that upon applying the applicable factors, a downward deviation is warranted. As she contends, she has extended parenting time with the parties' son as well as additional driving duties and associated costs. However, the trial court found her costs were offset by the benefits she receives from the generosity of her mother, who pays all of Byers' living expenses and bills.

**{¶75}** Byers testified that her mother pays her $200 per month condo association fee, $130 electric, and cable, internet and phone at $130 per month. She also testified that her mom pays for the gas to fill up her SUV approximately every other day at $60 each or 15 times per month. She also pays Byers' $100 per month for her mobile phone and approximately $1,200 to $1,500 per month in credit card bills. The foregoing totals approximately $2,600 per month or $31,920 per year ($2,600 times 12).

**{¶76}** Her mother also pays her car insurance of approximately $1,000 per year and $140 per year for her sons' flag football and $30 for books per year, on each child, and $30 per year for CCD, and about $1,000 on each child per year for gifts for a total of $1,360 additional annual expenses for a total of $33,280.

14

**{¶77}** Byers confirmed that her mother also owns the three-bedroom condo in which she lives and paid for the SUV that she drives, but there are no facts in evidence to support the cost or benefit associated with these items.

**{¶78}** Thus, we agree that the court's reference to the estimated $51,800 benefits Byers receives per year is not supported by the record. However, the trial court notes in its findings that this is counsel's argument.

**{¶79}** Instead, appellee's counsel established that Byers' mother pays approximately $33,280 for her annual expenses. Notwithstanding the difference, i.e., $18,520, the trial court did not include the financial benefits Byers receives from her mother on the child support worksheet as income, but relied on this as one factor in not deviating from her obligation calculated pursuant to the child support worksheet. Further, it is undisputed that Byers enjoys significant financial support from her mother, and the court's reliance on this fact in choosing not to deviate under R.C. 3119.23(H) or (P) comports with reason and the record.

**{¶80}** Accordingly, Byers' third assigned error lacks merit.

**{¶81}** Byers' fourth and final argument alleges that the trial court erred in making her child support obligation retroactive to August 1, 2014 as opposed to the date of Cartechine's motion, i.e., January 11, 2016.

**{¶82}** A support order can only be retroactive to the date the motion was filed. *Tobens v. Brill,* 89 Ohio App.3d 298, 304, 624 N.E.2d 265 (3d Dist.1993), citing *Murphy v. Murphy*, 13 Ohio App.3d 388, 469 N.E.2d 564 (1984).

15

**{¶83}** Here, Cartechine first requested the modification in his motion for custody and motion to terminate shared parenting plan filed July 30, 2014. He renewed his motion on January 11, 2016.

**{¶84}** Accordingly, we find no error in the court's order making Byers the obligor effective August 1, 2014 since this date corresponds with Cartechine's first motion. Thus, her fourth assignment of error lacks merit.

**{¶85}** Based on the foregoing, the trial court's decision is affirmed in full.

CYNTHIA WESTCOTT RICE, P.J.,

DIANE V. GRENDELL, J.,

concur.