[Cite as *Lake Cty. Dept. of Job & Family Servs. v. Bailey*, 2020-Ohio-986.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| LAKE COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES; CHILD SUPPORT ENFORCEMENT DIVISION, | : | **O P I N I O N** |
| | : | |
| Plaintiff, | : | **CASE NO. 2019-L-079** |
| | : | |
| RACHELE M. SPRAGUE, | : | |
| Plaintiff-Appellant, | : | |
| - vs - | : | |
| JEFFREY D. BAILEY, | : | |
| Defendant-Appellee. | : | |

Appeal from the Lake County Court of Common Pleas, Juvenile Division, Case No. 2016 SE 01444.

Judgment: Affirmed.


*R. Russell Kubyn,* Kubyn & Ghaster, 8373 Mentor Avenue, Mentor, OH 44060 (For Plaintiff-Appellant).

*Brett J. Plassard,* 1875 West Jackson Street, Painesville, OH 44077 (For Defendant-Appellee).


CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Rachele M. Sprague, appeals the August 2, 2019, judgment of the Lake County Court of Common Pleas, Juvenile Division, modifying, inter alia, the amount of child support appellee, Jeffrey Bailey, owes for the support of their minor child. For the reasons set forth in this opinion, the judgment is affirmed.

{¶2} Appellant and appellee have one child together. In 2015, the Lake County Child Support Enforcement Division established a child support order naming appellee as obligor. In September 2016, the Lake County Department of Job and Family Services ("LCDJFS") filed a Complaint to Recognize Administrative Support and Cash Medical Support Order on behalf of appellant against appellee. In February 2017, a trial was held before a magistrate who issued a recommendation to recognize the Administrative Order. The trial court adopted the magistrate's decision and, impertinently to the case at bar, modified it in August 2017. Appellee's child support obligation was determined to be $1,263.13 per month plus processing charges when health insurance is provided.

{¶3} Between 1982 and 2017, appellee was employed as a certified registered nurse anesthetist earning approximately $150,000 just prior to his termination. Appellant did not have a consistent work history, sometimes working as a part-time dental assistant earning approximately $17 per hour. In early 2017, as appellant was facing domestic violence charges against appellee, appellant contacted appellee's employer and the Ohio Board of Nursing to inform them that appellee had problems with drugs and alcohol, and undisclosed convictions, which prompted an investigation into appellee's nursing licensures. In November 2017, appellee's employer told him not to return to work until the issues surrounding his nursing licenses were resolved; he was terminated on November 29, 2017. Assuming, correctly, that his licenses would be suspended, appellee voluntarily placed his licenses into inactive status in December 2017 and has been collecting unemployment benefits.

{¶4} The Ohio Board of Nursing ultimately determined that appellee had falsified his nursing license application and renewals by inaccurately attesting he had no OVI or other convictions. Appellee admitted to having falsified these documents, and appellee

2

and the Board entered into a Consent Agreement which suspended his nursing licenses indefinitely, with the option to have the suspension stayed if numerous probationary terms are met and certain restrictions followed.

{¶5} After inactivating his licenses, appellee filed a Request for an Administrative Review of the Child Support Order with LCDJFS, asserting as a basis for reducing the amount he owes in child support that he was involuntarily unemployed. In early March 2018, he filed a Motion to Modify/Suspend Child Support. A few weeks later, LCDJFS determined that appellee was not voluntarily unemployed and recommended that appellee's obligation be reduced to $554.43 per month, plus processing charges, when health insurance is provided, based on his unemployment income. In April 2018, appellant filed a Request for Court Hearing on the revised amount of child support calculated by the Child Support Enforcement Division ("CSED") of LCDJFS. A trial was eventually held before a magistrate on February 14, 2019 and April 5, 2019.

{¶6} At the time of the trial, appellee was within a year of eligibility for retirement and testified that he had not attempted to complete the steps set forth in the Consent Agreement necessary to reinstate his licenses. He testified he feared he was "unhireable" in the nursing field under the circumstances as he was required to provide any potential employer who required him to have a nursing license with a copy of the Consent Agreement. Instead of working to reinstate his licenses, he intended to find work at a hardware store and retire in November 2019 to collect Social Security benefits.

{¶7} In May 2019, the magistrate issued a decision recommending adoption of the revised amount of child support calculated by CSEA, noting appellant did not have "clean hands" in the matter as she had reported appellee's falsifications to the authorities. Appellant objected, arguing the magistrate improperly applied the "clean hands" doctrine

3

and should have imputed appellee's former income to him based on his voluntary unemployment. Appellee responded to the objections, but did not object to the magistrate's finding that he was fired from his employer. The next day, the judge issued a judgment entry summarily overruling appellant's objections and adopting the magistrate's recommendation. Appellant now appeals, assigning one error for our review:

{¶8} The trial court erred and committed an abuse of discretion in adopting the magistrate's decision and finding the appellee is not voluntarily unemployed/underemployed and imputing income thereto as well as otherwise granting the motion to modify child support order and overruling the appellant's objections to the administrative support order, particularly since the lost professional income source was due solely to the appellee-obligor's own actions and/or inactions. (T.D. 38, 54, 55, 56).

{¶9} "Absent an abuse of discretion, a trial court's determination regarding child support obligations will not be disturbed on appeal." *Byers v. Cartechine*, 11th Dist. Lake No. 2017-L-043, 2017-Ohio-9334, ¶14, citing *Pauly v. Pauly*, 80 Ohio St.3d 386, 390 (1997). "The term 'abuse of discretion' is one of art, 'connoting judgment exercised by a court, which does not comport with reason or the record.'" (Citations omitted.) *Keen v. Wilson*, 11th Dist. Trumbull No. 2018-T-0078, 2019-Ohio-2398, ¶53. "An abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *Byers, supra*, at ¶15, quoting *State v. Beechler*, 2d Dist. Clark No. 09–CA–54, 2010–Ohio–1900, ¶62. "When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error * * *. By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Byers, supra*, at ¶15, quoting *Ivancic v. Enos*, 11th Dist. Lake No. 2011-L-050, 2012–Ohio–3639, ¶70.

4

{¶10} First, appellant asserts the trial court, in adopting the magistrate's decision in full and overruling her objections, failed to conduct an independent analysis despite the court's express statement to the contrary. As appellant correctly notes, if a party timely objects to a magistrate's decision, "the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Juv.R. 40(D)(4)(d). Appellant argues "the trial court should have independently found that the Magistrate made errors in the findings of fact and recommendations." However, in its judgment entry, the trial court stated "[t]he Court has conducted an independent review of the file, objections, transcript, supplemental objections, response, case law and statutory authority."

{¶11} Generally, there is a presumption that the trial court conducted an independent analysis in reviewing a magistrate's decision. *See Rodriguez v. Rodriguez*, 3d Dist. Mercer No. 10-13-15, 2013-Ohio-5663, ¶26; *Faulks v. Flynn*, 4th Dist. Scioto No. 13CA3568, 2014-Ohio-1610, ¶27; *In re Taylor G.*, 6th Dist. Lucas No. L-05-1197, 2006-Ohio-1992, ¶21; *Stowe v. Chuck's Automotive Repair, LLC*, 9th Dist. Summit No. 29017, 2019-Ohio-1158, ¶7. Accordingly, "the party asserting error bears the burden of affirmatively demonstrating the trial court's failure to perform its [analogous statute] duty of independent analysis." *State ex rel. Scioto Cty. Child Support Enf't Agency v. Adams*, 4th Dist. Scioto No. 98CA2617, 1999 WL 597257, *9 (July 23, 1999). *See also Wilcox v. Iiams*, 3rd Dist. Logan No. 8-18-64, 2019-Ohio-3030, ¶9; *Freeman v. Freeman*, 9th Dist. Wayne No. 07CA0036, 2007-Ohio-6400, ¶53; *Stowe, supra*. "'An affirmative duty requires more than a mere inference, it requires appellant to provide the reviewing court with facts to rebut our general presumption.'" *Stowe, supra,* quoting *In re Taylor G., supra.*

5

{¶12} Juv.R. 53(D)(4)(d) requires that the court conduct the independent analysis; it does not mandate the court elucidate its analysis in its judgment. *See In re B.D.*, 11th Dist. Lake Nos. 2009-L-003 and 2009-L-007, 2009-Ohio-2299, ¶79 ("As the trial court did not represent on record that it had engaged in a review of the fifteen excluded documents and there is nothing in the record to indicate such a review took place, we hold the trial court failed to meet its obligation under Juv.R. 40(D)(4)(d)."). Here, the trial court expressly stated it completed an independent review. Appellant asks that we infer irregularity in the trial court's proceedings and disregard the trial court's express statement to the contrary without presenting any facts to support the assertion. As appellant has not affirmatively demonstrated the court's failure to conduct an independent analysis, we find no error on this issue.

{¶13} Second, appellant takes issue with the magistrate's use of the "clean hands" doctrine in this matter. She asserts that despite appellant having disclosed to the nursing board that appellee falsified information pertaining to certain legal matters, this should not be taken into account when determining whether appellee was voluntarily underemployed.

{¶14} The doctrine of unclean hands is the principle that "a party cannot seek equitable relief or assert an equitable defense if that party has violated an equitable principle, such as good faith." CLEAN-HANDS DOCTRINE, Black's Law Dictionary (11th ed. 2019). Put differently, "a party will not obtain equitable relief if the injury incurred by such party is 'chargeable to his own wrong.'" *Barone v. Barone*, 11th Dist. Geauga No. 2004-G-2575, 2005-Ohio-4479, ¶23, quoting *Piatt v. Smith*, 12 Ohio St. 561, 570 (1861). "Equity requires that whenever a party takes the initiative to set in motion the judicial machinery to obtain some remedy but has violated good faith by his or her prior-related

6

conduct, he will be denied the remedy. To bar a party's claims, that party must be found to be at fault in relation to the other party and in relation to the transaction upon which the claims are based." *Offenberg v. Offenberg*, 8th Dist. Cuyahoga Nos. 78885, 78886, 79425, and 79426, 2003-Ohio-269, ¶66, citing *Marinaro v. Major Indoor Soccer League*, 81 Ohio App.3d 42 (9th Dist.1991), and *Trott v. Trott*, 10th Dist. Franklin No. 01AP-852, 2002-Ohio-1077.

{¶15} The doctrine of unclean hands is a defense against claims in equity; it does not apply where a party is not attempting to invoke the equitable powers of the court. *Rivers v. Otis Elevator*, 8th Dist. Cuyahoga No. 99365, 2013-Ohio-3917, ¶35. The doctrine "should not be imposed where a party has a legal remedy available to address an opposing party's misconduct." *Safranek v. Safranek,* 8th Dist. Cuyahoga No. 80413, 2002-Ohio-5066, ¶20. Appellant argues that "the calculation of child support and the determination of whether one is voluntarily unemploy[ed] or underemployed is not an equitable remedy, but one of law and statute." Under these circumstances, we disagree.

{¶16} "The function of equitable relief is to supplement the law where the law is insufficient to remedy a wrong." *Barone, supra,* at ¶17. R.C. 3105.011 specifically states that courts determining matters of child support modification have full equitable powers:

{¶17} (A) The court of common pleas including divisions of courts of domestic relations, has full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters. * * *

{¶18} (B) For purposes of this section, "domestic relations matters" means both of the following:

{¶19} (1) Any matter committed to the jurisdiction of the division of domestic relations of common pleas courts under section 2301.03 of the Revised Code, as well as a complaint for child support * * *, including the enforcement and modification of such orders * * *.

7

{¶20} Moreover, R.C. 3119.05(I) states in pertinent part:

{¶21} (I) *Unless it would be unjust or inappropriate and therefore not in the best interests of the child,* a court or agency shall not determine a parent to be voluntarily unemployed or underemployed and shall not impute income to that parent if any of the following conditions exist: * * * (Emphasis added.)

{¶22} The language of R.C. 3119.05(I) invokes a court's equitable powers by leaving it to the court's discretion whether it would be unjust, inappropriate, or not in the best interests of the child to impute income to a parent. Furthermore, in imputing income to a parent that the court has determined is voluntarily unemployed or voluntarily underemployed, the court considers the factors of R.C. 3119.01(C)(17), which includes "(x) any other relevant factor." Thus, in deciding whether to modify a child support order and in determining whether an obligor is voluntarily unemployed, the court is called upon to exercise its equitable powers.

{¶23} Furthermore, we cannot say the court abused its discretion in finding appellant had unclean hands. Evidence was presented to show that appellant knew about and benefited from appellee's falsifications. She testified that she took his tests for the nursing board for him online but didn't fill out the application on which he didn't disclose the convictions. She did not explain when or how she eventually discovered his falsification prior to reporting him. He testified that they discussed his nursing license renewal applications and, due to his unfamiliarity with computers, she filled out the renewal applications online for him and knowingly entered the false information at his direction. Appellee also testified that appellant told him "if I go down, you go down" as she was facing the domestic violence charges, which immediately preceded her report to his employer. She sent the letter to the Ohio Board of Nursing a few weeks after getting out of jail but before she reobtained custody of their child, which was granted to appellee

8

for the period of her imprisonment. Thus, we do not find the court abused its discretion in finding appellant came to court with unclean hands.

{¶24} Finally, appellant asserts the trial court erred in adopting the magistrate's decision finding he was not voluntarily unemployed because he did not have an objectively reasonable basis for not pursuing reinstatement of his nursing licenses.

{¶25} When calculating child support, the trial court must first determine the annual gross income of each parent. *Byers, supra,* at ¶26. "Whether a parent is 'voluntarily unemployed' and the amount of imputed income are matters to be determined by the trial court based on the facts of the case. * * * '[T]he Ohio Supreme Court has observed that "voluntarily" means "[d]one by design or intention, intentional, proposed, intended, or not accidental. Intentionally and without coercion."'" *Id.* at ¶27, quoting *Rock v. Cabral*, 67 Ohio St.3d 108,111 (1993), fn.2.

{¶26} The burden of proving voluntary unemployment is on the parent who claims that the other is voluntarily unemployed. *Byers, supra,* at ¶28. "'The parent's subjective motivations to be voluntarily unemployed * * * play no part in the determination whether potential income is to be imputed to that parent.'" *Hardman v. Hardman,* 11th Dist. Trumbull No. 2005-T-0035, 2006-Ohio-1793, ¶11, quoting *Rock, supra,* at 111. "Therefore, a parent seeking a modification of his or her support obligation based on a reduced annual income 'must be able to demonstrate an "objectively reasonable basis" for terminating or otherwise diminishing employment.'" *Hardman, supra,* quoting *Franks v. Franks,* 11th Dist. Portage No. 2000-P-0015, 2001 WL 687486 (June 15, 2001). *See also Diamond v. Diamond,* 11th Dist. Trumbull No. 2002-T-0113, 2003-Ohio-3548.

{¶27} This court has explained that "[r]easonableness is measured by examining the effect of the parent's decision on the interests of the child. * * * The voluntary reduction

9

is not sufficient in and of itself that income should be imputed. * * * The test is not only whether the change was voluntary, but also whether it was made with due regard to one's income-producing abilities and her duty to provide for the continuing needs of the child concerned." *Id.* at ¶14-15, quoting *Franks, supra. See also Sweeney v. Sweeney*, 1st Dist. Hamilton No. C-180076, 2019-Ohio-1750, ¶27.

{¶28} Appellant analogizes these circumstances to *Combs v. Combs,* 12th Dist. Warren No. CA2001-11-102, 2003-Ohio-198. The facts in *Combs*, however, are distinguishable from the case at hand. There, the obligor voluntarily retired at age 52. Though the trial court noted that the obligor's decision to retire was at least partly motivated by a desire to avoid disciplinary charges and potential termination, the court also found that the obligor could have maintained his employment with the union, having served as a union representative for more than a decade. In so finding, the court found the obligor voluntarily unemployed and imputed income to him.

{¶29} Here, appellee was terminated from his employer after losing his nursing licenses, a fact he readily admits. Assuming he would not be able to find work in his chosen field under the circumstances, he planned to work at a hardware store until he could retire in November 2019 at age 62. Appellee argues that unlike in *Combs,* where there was evidence that he could have sought employment with the union, here he is unemployable in the field. Appellant presented no evidence to counter this, and even admitted that he should not be permitted to work as a nurse anesthetist due to his alleged drinking habits.

{¶30} The evidence before the court showed that appellee had 35 years of experience in nursing/anesthesiology. Appellee admitted to having lied on his nursing license application and renewals about having OVI and other convictions. Appellant

10

reported his conduct to his employer and the Ohio Board of Nursing, directly precipitating his termination of employment and the suspension of his licenses. Appellee then voluntarily inactivated his licenses, in anticipation of their suspension. Because of his falsification, appellee's licenses are suspended indefinitely but appellee may reinstate his licenses by completing a number of steps, including attending remedial class and paying fines. He would have to disclose his convictions and the license suspension to any potential nursing employer. Appellee testified he fears he is unhireable in that field; no evidence was presented to the contrary. Thus, instead of working to reinstate his licenses, which may have been a futile effort because of his tarnished record, appellee collected unemployment, sought work at a hardware store, and planned to retire in November 2019, on social security at age 62. Under the circumstances, the court did not abuse its discretion in finding it was reasonable for appellee to choose not to pursue reinstatement of his licenses, and thus find that appellee was not voluntarily unemployed.

{¶31} Accordingly, appellant's assignment of error is without merit. The decision of the Lake County Court of Common Pleas, Juvenile Division is affirmed.


TIMOTHY P. CANNON, P.J.,

THOMAS R. WRIGHT, J.,

concur.